Qabail **HIZBULLAHANKHAMON,**
Petitioner–Appellant,

v.

Hans **WALKER, The Superintendent**
of Auburn Correctional Facility,
Respondent–Appellee.

No. 00–2493.

United States Court of Appeals,
Second Circuit.

Argued March 14, 2001.

Decided June 15, 2001.

Perry S. Reich, Schapiro & Reich, Lindenhurst, NY, for Petitioner–Appellant.

David A. Shimkin, Assistant District Attorney, Bronx, NY, (Robert T. Johnson, District Attorney, Joseph N. Ferdenzi, Assistant District Attorney, Bronx County, Bronx, NY, on the brief), for Respondent–Appellee.

Before SOTOMAYOR and KATZMANN, Circuit Judges, and CHIN, District Judge.*

SOTOMAYOR, Circuit Judge:

Petitioner-appellant Qabail Hizbullahankhamon appeals from a judgment of the United States District Court for the Southern District of New York (Shira A. Sheindlin, *Judge*) dismissing his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1) on the ground that the petition was time-barred pursuant to 28 U.S.C. § 2244(d)(1). *Hizbullahankhamon v. Walker,* 105 F.Supp.2d 339 (S.D.N.Y. 2000). Petitioner argues that his petition was timely filed because the one-year limitations period for filing habeas petitions should be tolled (i) during the pendency of his applications to the New York Court of Appeals for leave to appeal the Appellate Division's orders denying his two motions for a writ of error *coram nobis,* (ii) during the 30–day periods in which petitioner could have moved in the Appellate Division for reargument of the denial of his two *coram nobis* motions, and (iii) during two periods he spent in solitary confinement allegedly without access to legal materials. We hold that, because petitioner's *coram nobis* motions ceased to be pending on the dates they were denied by the Appellate Division, the one-year limitations period was not tolled during the pendency of his applications for leave to appeal these denials to the New York Court of Appeals. We also hold that the one-year limitations period should not be equitably tolled during the initial period petitioner spent in solitary confinement because petitioner failed to exercise reasonable diligence upon his return to standard confinement where he had access to legal materials. Absent the tolling to which petitioner would be entitled were these two arguments successful, the petition was filed beyond the one-year limitations period.

* The Honorable Denny Chin, of the United States District Court for the Southern District of New York, sitting by designation.

Therefore, we do not reach petitioner's remaining contentions and affirm the district court's judgment dismissing the petition as untimely.

## BACKGROUND

On August 8, 1989, petitioner Qabail Hizbullahankhamon, then known as Kirk Johnson, was convicted in Bronx County Supreme Court, following a jury trial, of murder in the second degree (three counts) and attempted murder in the second degree (two counts). Petitioner was sentenced to consecutive indeterminate terms of imprisonment of 25 years to life on each murder count and eight and one-third to 25 years on each attempted murder count.

On direct appeal, the Appellate Division, First Department, unanimously affirmed the conviction, *People v. Johnson*, 181 A.D.2d 509, 580 N.Y.S.2d 357 (1st Dep't 1992). The Court of Appeals denied petitioner's application for leave to appeal, *People v. Johnson*, 80 N.Y.2d 833, 587 N.Y.S.2d 917, 600 N.E.2d 644 (1992), and, on December 10, 1992, denied his application for reconsideration, *People v. Johnson*, 81 N.Y.2d 763, 594 N.Y.S.2d 725, 610 N.E.2d 398 (1992). Petitioner's conviction thus became final on March 10, 1993, the date on which the time to petition for *certiorari* to the Supreme Court of the United States expired. *See Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir.1998).

On January 28, 1997, petitioner filed the first of two motions for a writ of error *coram nobis* in the Appellate Division, alleging ineffective assistance of appellate counsel. The Appellate Division denied this first motion on August 21, 1997, *People v. Johnson*, 242 A.D.2d 408, 661 N.Y.S.2d 689 (1st Dep't 1997). The Court of Appeals dismissed petitioner's application for leave to appeal this denial on October 10, 1997, *People v. Hizbullahank-hamon*, 90 N.Y.2d 1012, 666 N.Y.S.2d 107, 688 N.E.2d 1390 (1997), and denied his application for reconsideration on November 24, 1997, *People v. Hizbullahankhamon*, 91 N.Y.2d 834, 667 N.Y.S.2d 688, 690 N.E.2d 497 (1997). Petitioner filed his second *coram nobis* motion on June 17, 1998. The Appellate Division denied this second motion on February 18, 1999, *People v. Johnson*, 258 A.D.2d 977 (1st Dep't 1999), and the Court of Appeals dismissed his application for leave to appeal this denial on April 8, 1999, *People v. Hizbullahankhamon*, 93 N.Y.2d 899, 689 N.Y.S.2d 711, 711 N.E.2d 987 (1999).

Prior to filing his first *coram nobis* motion, petitioner was placed in solitary confinement from November 15, 1995 to May 16, 1996. On November 20, 1997, approximately three months after the Appellate Division denied petitioner's first *coram nobis* motion, petitioner was again placed in solitary confinement, where he remained until June 2, 1998. Petitioner alleges that, during these periods in solitary confinement, he was denied access to his legal files and to the law library.

Petitioner filed his federal habeas corpus petition on April 15, 1999. In an Opinion and Order filed August 1, 2000, the district court granted respondent's motion to dismiss the petition on the ground that it was time-barred under 28 U.S.C. § 2244(d)(1), as interpreted by *Ross*, and granted a certificate of appealability. *Hizbullahankhamon v. Walker*, 105 F.Supp.2d 339 (S.D.N.Y.2000). Petitioner timely appealed.

## DISCUSSION

We review a district court's ruling on a petition for a writ of habeas corpus *de novo*. *English v. Artuz*, 164 F.3d 105, 108 (2d Cir.1998).

Under Title I of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214, 1217 (codified at 28 U.S.C. § 2244), a prisoner in state custody has one year after the date his conviction became final in which to file a habeas petition. 28 U.S.C. § 2244(d)(1). A prisoner whose conviction became final prior to the AEDPA's effective date of April 24, 1996, has a one-year grace period after that date in which to file a first habeas petition. *Ross*, 150 F.3d at 102–03. However, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" this one-year period. 28 U.S.C. § 2244(d)(2); *see also Bennett v. Artuz*, 199 F.3d 116, 118–19 (2d Cir.1999) (holding that Section 2244(d)(2) is applicable to the one-year grace period), *aff'd*, 531 U.S. 4, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000).

Because petitioner's conviction became final prior to April 24, 1996, he had until April 24, 1997, to file a first habeas petition, plus any time tolled under Section 2244(d)(2) or the doctrine of equitable tolling. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.) (per curiam), *cert. denied*, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 63 (2000); *Ross*, 150 F.3d at 102–03. As noted, petitioner filed his petition on April 15, 1999, a total of 1,086 days after April 24, 1996. The parties agree that, pursuant to Section 2244(d)(2), the limitations period was tolled (1) between the filing of the first *coram nobis* motion on January 28, 1997, and the Appellate Division's denial of the motion on August 21, 1997 (that is, 205 days) and (2) between the filing of the second *coram nobis* motion on June 17,

1998, and the Appellate Division's denial of the motion on February 18, 1999 (that is, 246 days). Subtracting this time from the 1,086 day total reduces the elapsed time to 635 days.[1]

Petitioner advances three additional grounds for tolling the limitations period. First, petitioner contends, as he did below, that, pursuant to Section 2244(d)(2), the limitations period was tolled during the pendency of each of his two applications to the Court of Appeals for leave to appeal the Appellate Division's orders denying his two *coram nobis* motions. Second, petitioner contends, for the first time on appeal, that the limitations period was tolled during the 30 day periods in which he could have moved in the Appellate Division for reargument of the denials of his *coram nobis* motions. Third, petitioner argues, as he did below, that, under the doctrine of equitable tolling, the limitations period should be tolled one day for each day he spent in solitary confinement without access to legal materials. We discuss these tolling arguments *seriatim*.

**I. Tolling During Applications For Leave to Appeal Denial of the *Coram Nobis* Motions**

■ Petitioner contends that, under Section 2244(d)(2), the one-year limitations period was tolled (1) during the 95 day interval between the Appellate Division's order denying his first *coram nobis* motion on August 21, 1997, and the New York Court of Appeals' denial of his motion for reconsideration of its dismissal of his application for leave to appeal that order on November 24, 1997, and (2) during the 45-day interval between the Appellate Division's order denying his second *coram nobis* motion on February 22, 1999, and the

---

1. The district court erroneously calculated this total to be 620 days. *Hizbullahankha-* *mon*, 105 F.Supp.2d at 343.

Court of Appeals' dismissal of his application for leave to appeal that order on April 8, 1999. Subtracting these 140 days[2] from the undisputed elapsed time of 635 days would reduce the elapsed time to 495 days.

The district court held that this tolling argument is foreclosed by our holdings in *Bennett v. Artuz*, 199 F.3d 116 (2d Cir. 1999) and *Geraci v. Senkowski*, 211 F.3d 6 (2d Cir.), *cert. denied*, 531 U.S. 1018, 121 S.Ct. 581, 148 L.Ed.2d 497 (2000). *Hizbullahankhamon*, 105 F.Supp.2d at 345. We agree.

In *Bennett*, we addressed the issue of when an application for post-conviction review is "properly filed" under 28 U.S.C. § 2244(d)(2). We "construe[d] 'properly filed' to mean simply that an application for state post-conviction relief recognized as such under governing state procedures has been filed." 199 F.3d at 123. We also considered the issue of when an application for post-conviction review is "pending" under Section 2244(d)(2). Noting that Section 2244(d)(2) "complements the 28 U.S.C. § 2254(c) exhaustion requirement by tolling the limitations period on federal habeas petitions while an appellant pursues state-court remedies," we declined "to hold that a post-conviction petition is not pending before state courts during the intervals between disposition and appeal" on the ground that this holding "would force appellants into federal court prematurely, before 'giv[ing] . . . state courts [a] full opportunity to resolve any constitutional issues.'" *Id.* at 119–20 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)). We therefore held instead that "a state-court petition [for post-conviction or other collateral review] is 'pending' from the time it is first filed until finally disposed of and further

appellate review is unavailable under the particular state's procedures." *Id.* at 120. This holding clearly presupposes that the appeal from an initial determination on post-conviction review does not constitute a distinct application for post-conviction review in addition to the initial application. Once a court determines that the initial application was "properly filed," the "properly filed" inquiry comes to an end; the only remaining question is when further appellate review of the initial application becomes unavailable.

■ In *Geraci*, we addressed this latter question with respect to a motion in the Appellate Division for a writ of error *coram nobis*. We held that petitioner's motion ceased to be pending on the date on which the Appellate Division denied it, because, as of that date, "the door of the New York Court of Appeals was closed and further appellate review was unavailable." *Geraci*, 211 F.3d at 9. In support of this statement about New York procedural law governing *coram nobis* applications, we cited *People v. Adams*, 82 N.Y.2d 773, 603 N.Y.S.2d 991, 624 N.E.2d 175 (1993). In *Adams*, the Court of Appeals dismissed the appellant's motion for an extension of time within which to apply for permission to appeal the Appellate Division's denial of his *coram nobis* motion on the ground that "no application for leave to appeal . . . will lie from the order of the Appellate Division denying an application for a writ of error *coram nobis*." *Id.* at 773, 603 N.Y.S.2d 991, 624 N.E.2d 175. The Court of Appeals established this rule as early as 1991, and it was well-settled law at the time Hizbullahankhamon filed his first *coram nobis* application on January 28, 1997. *See People v. Howard*, 89 N.Y.2d 857, 652 N.Y.S.2d 735, 675 N.E.2d 470 (1996); *Peo-*

2. The district court erroneously calculated this total to be 139 days. *Hizbullahankha-mon*, 105 F.Supp.2d at 343.

ple v. Abdullah, 84 N.Y.2d 975, 622 N.Y.S.2d 904, 647 N.E.2d 109 (1994); People v. de Leon, 83 N.Y.2d 779, 611 N.Y.S.2d 126, 633 N.E.2d 481 (1994); People v. Ames, 82 N.Y.2d 918, 610 N.Y.S.2d 146, 632 N.E.2d 457 (1994); People v. Medina, 82 N.Y.2d 746, 602 N.Y.S.2d 800, 622 N.E.2d 301 (1993); People v. Burgess, 82 N.Y.2d 741, 602 N.Y.S.2d 797, 622 N.E.2d 297 (1993); People v. Hughes, 80 N.Y.2d 1022, 592 N.Y.S.2d 668, 607 N.E.2d 815 (1992); People v. Rivera, 80 N.Y.2d 922, 589 N.Y.S.2d 306, 602 N.E.2d 1122 (1992); People v. Soto, 80 N.Y.2d 824, 587 N.Y.S.2d 896, 600 N.E.2d 623 (1992); People v. Marsicoveteri, 79 N.Y.2d 913, 581 N.Y.S.2d 664, 590 N.E.2d 249 (1992); People v. Giraldi, 79 N.Y.2d 887, 581 N.Y.S.2d 279, 589 N.E.2d 1261 (1992); People v. White, 78 N.Y.2d 1004, 575 N.Y.S.2d 278, 580 N.E.2d 764 (1991); People v. Williams, 78 N.Y.2d 1004, 575 N.Y.S.2d 279, 580 N.E.2d 765 (1991); People v. Tramell, 77 N.Y.2d 893, 568 N.Y.S.2d 910, 571 N.E.2d 80 (1991); see also Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 124 (2d Cir.1995) (observing that "the denial of a petition for a writ of error coram nobis is not appealable to the Court of Appeals").[3]

■ Petitioner urges this Court to hold that an application to the Court of Appeals for leave to appeal the Appellate Division's denial of a motion for a writ of error coram nobis qualifies as a "properly filed application for State post-conviction or other collateral relief" that tolls the one-year limitations period so long as it is "pending." 28 U.S.C. § 2244(d)(2). We are foreclosed by Bennett from adopting this position because this position erroneously presupposes that an application for leave to appeal an order denying a coram nobis motion is a distinct "application for State post-conviction or other collateral review" in addition to the initial coram nobis motion itself. Under Bennett, however, the only question with respect to the "properly filed" requirement is whether petitioner's initial coram nobis motions were properly filed; there is no additional question of whether petitioner's applications for leave to appeal the orders denying these motions were properly filed. The only additional question is when these motions ceased to be pending. Geraci compels us to answer that the first coram nobis motion ceased to be pending on August 21, 1997, the date on which it was denied by the Appellate Division; and that the second coram nobis motion ceased to be pending on February 22, 1999, the date on which it was denied by the Appellate Division. Therefore, the one-year limitations period was not tolled during the intervals between these denials

---

**3.** Petitioner's reliance on Sowell v. Stinson, 72 F.Supp.2d 66 (E.D.N.Y.1998), is unavailing. Sowell held that the one-year limitations period was tolled during the pendency of the petitioner's application to the Court of Appeals for leave to appeal the Appellate Division's denial of his coram nobis motion. This holding, however, is unfounded to the extent that it was based on the district court's erroneous statement that "the Court of Appeals has never 'explicitly' held that there is no avenue for appeal of ineffective assistance of appellate counsel claims." Id. at 69.

Petitioner also argues that, even if no appeal lies from an order denying a coram nobis motion, "there may be other methods of obtaining review of it, such as through appeal of the final judgment." Petitioner speculates that "the application for permission to appeal from the coram nobis order could be considered an application for reargument or reconsideration of the prior application for permission to [directly] appeal from the final judgment." Petitioner cites not a single case, however, in which the Court of Appeals has so considered an application for leave to appeal an order denying a coram nobis motion. Hence, this argument is foreclosed by our holding in Adeline v. Stinson, 206 F.3d 249, 253 (2d Cir.2000), that AEDPA does not "authorize tolling based on the filing of creative, unrecognized motions for leave to appeal."

and the dates on which the Court of Appeals dismissed petitioner's applications for leave to appeal these denials.[4]

We note that this holding is consistent with the consideration upon which we based our holding in *Bennett* that an application for post-conviction review is pending from the time it is filed, during the intervals between disposition and appeal, and until further appellate review is unavailable, namely, the complementary relationship between AEDPA's tolling provision and AEDPA's exhaustion requirement. *Bennett,* 199 F.3d at 119 (stating that "tolling the federal statute of limitations while the state prisoner is properly adhering to exhaustion requirements reinforces the orderly presentation of claims to the appropriate state tribunals and obviates the need for federal action") (internal alterations and quotation marks omitted); *see also O'Sullivan,* 526 U.S. at 847, 119 S.Ct. 1728 ("The exhaustion doctrine ... turns on an inquiry into what [review] procedures are 'available' under state law."). Because review of an Appellate Division order denying a motion for a writ of error *coram nobis* is unavailable in the New York Court of Appeals, the Court of Appeals has no "opportunity to resolve any constitutional issues," *O'Sullivan,* 526 U.S. at 845, 119 S.Ct. 1728, raised in such a

doomed appeal. Therefore, it would be an exercise in utter futility to require habeas petitioners—for purposes of exhaustion—to file such appeals. *See id.* at 847–48, 119 S.Ct. 1728 ("[T]here is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available."). Correspondingly, tolling the limitations period during the pendency of such appeals would unjustifiably frustrate the purposes underlying Congress's enactment of AEDPA's one-year statute of limitations. 28 U.S.C. § 2244(d)(1); *see also* James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice & Procedure § 5.1b, at 236 n. 64 (3d ed.1998) (stating that an "apparent purpose[ ] of the 'properly filed' language ... [is] to keep prisoners from making bad faith use of state postconviction proceedings to delay the onset of federal habeas corpus proceedings and the final adjudication of the legality of their convictions and sentences").[5]

## II. Tolling During Time for Reargument of the *Coram Nobis* Motions

■ Petitioner argues, for the first time on appeal, that the one-year limitations period was tolled during the periods in which he could have sought reargument in the Appellate Division of its orders deny-

4. Assuming *arguendo* that petitioner's applications for leave to appeal the denials of his *coram nobis* motions are distinct applications for state post-conviction relief—as petitioner presupposes—we would be compelled to reach the same result. As noted in the preceding footnote, in *Adeline* we held that "creative, unrecognized motions for leave to appeal" do not qualify as "properly filed" applications for state post-conviction relief. *Adeline,* 206 F.3d at 253. Because an application for leave to appeal the denial a *coram nobis* motion is not recognized by New York State law, it follows that petitioner's leave applications were not "properly filed," and thus that the one-year limitations period was not tolled during their pendency.

5. Contrary to petitioner's suggestion, our holding today is not inconsistent with the Supreme Court's interpretation of "properly filed" in *Artuz v. Bennett,* 531 U.S. 4, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000). In *Artuz,* the Court affirmed our interpretation of the "properly filed" element of Section 2244(d)(2)—holding that "an application is *'properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz,* 121 S.Ct. at 364. The Supreme Court did not address *Bennett's* interpretation of "pending," that is, the element of Section 2244(d)(2) upon which our holding today is based.

ing his *coram nobis* motions. Petitioner contends that, although the relevant reargument rule states that "[m]otions for reargument shall be made within 30 days after the appeal has been decided," N.Y. Comp.Codes R. & Regs., tit. 22, § 600.14(a) (2000), the Court of Appeals and the First Department have interpreted this language to mean that the 30–day period runs from the date of service of the order with notice of entry of the denial. The State appears to concede that petitioner was never served with notice of entry of the denials of his *coram nobis* motions. Hence, if petitioner's interpretation of Rule 600.14(a) were correct, and we were to hold that a *coram nobis* motion is pending during the reargument period, it would follow that petitioner's *coram nobis* motions were still pending.

Even assuming that the First Department permits motions to reargue *coram nobis* motions, however—and petitioner has not cited, nor does our research disclose, any authority suggesting that it does[6]—petitioner's interpretation of Rule 600.14(a) is not correct. None of the cases petitioner cites in support of his interpretations concerns Section 600.14. *See People v. Washington*, 86 N.Y.2d 853, 633 N.Y.S.2d 476, 657 N.E.2d 497 (1995) (interpreting N.Y.Crim. Proc. L. § 460.10); *Matter of Park East Corp. v. Whalen*, 38 N.Y.2d 559, 381 N.Y.S.2d 819, 345 N.E.2d 289 (1976) (interpreting N.Y. Civ. Proc. L. & R. § 5514); *Luming Cafe, Inc. v. Birman*, 125 A.D.2d 180, 508 N.Y.S.2d 444 (1st Dep't 1986) (interpreting N.Y. Civ. Proc. L. & R. § 2221); *Am. Banana Co. v. Venezolana Int'l de Aviacion S.A.*, 69 A.D.2d 763, 415 N.Y.S.2d 2 (1st Dep't 1979) (interpreting N.Y. Civ. Proc. L. & R. § 5514). Moreover, of the First Department cases that have addressed Section 600.14(a), none have stated that it means anything other than what it says, namely, that the 30 day period runs from the date the First Department issues its decision. *See People v. Robles*, 203 A.D.2d 172, 177, 614 N.Y.S.2d 103 (1st Dep't 1994), *rev'd on other grounds*, 86 N.Y.2d 763, 631 N.Y.S.2d 131, 655 N.E.2d 172 (1995); *People v. Jones*, 128 A.D.2d 405, 407, 512 N.Y.S.2d 691 (1st Dep't), *aff'd*, 70 N.Y.2d 547, 523 N.Y.S.2d 53, 517 N.E.2d 865 (1987); *McMahon v. City of New York*, 105 A.D.2d 101, 104, 483 N.Y.S.2d 228 (1st Dep't 1984); *People v. Washington*, 75 A.D.2d 89, 91, 428 N.Y.S.2d 262 (1st Dep't 1980); *Coppola Bros. Excavation Corp. v. M. Melnick & Co.*, 56 A.D.2d 524, 524, 391

---

**6.** Indeed, our research reveals only a handful of cases in which two of the remaining three departments have considered such reargument motions. *See People v. Bethune*, 710 N.Y.S.2d 238 (4th Dep't 2000) (unpublished disposition); *People v. Johnson*, 710 N.Y.S.2d 238 (4th Dep't 2000) (unpublished disposition); *People v. Kelly*, 269 A.D.2d 885 (4th Dep't 2000); *People v. Anderson*, 220 A.D.2d 441, 632 N.Y.S.2d 473 (2d Dep't 1995); *People v. Lindstadt*, 209 A.D.2d 725, 619 N.Y.S.2d 949 (2d Dep't 1994).

Nor is there any other reargument rule pursuant to which petitioner could have moved for reargument of his *coram nobis* motions. Although N.Y. Civ. Prac. L. & R. § 2221 also concerns motions for reargument, its timing subsection explicitly provides that "[t]his rule shall not apply to motions to reargue a decision made by the appellate division or the court of appeals." N.Y. C.P.L.R. § 2221(d)(3). Although Section 2221(d)(3) did not become effective until July 20, 1999, that is, approximately five months after the denial of the second *coram nobis* motion on February 22, 1999, *see id.*, the July 1999 amendments to Section 2221 were essentially a "codification of existing practice." David D. Siegel, New York Practice § 254 (Supp. 2000); *see also* Paul Aloe, 1998–99 Survey of New York Practice, Civil Practice, 50 Syracuse L.Rev. 367, 380 (2000); *id.* at 381 n. 91 ("The exception for the appellate divisions and the Court of Appeals appears to be in deference to the rules for those courts governing rearguments.") (citing, *inter alia*, Section 600.14).

N.Y.S.2d 121 (1st Dep't 1977). This literal reading of Section 600.14(a) is likewise to be found in leading commentaries on New York appellate procedure. *See* Sanford F. Young, *Appeals From Intermediate Courts Require Careful Adherence to Applicable Statutes and Rules*, 71 Mar. N.Y. St. B.J. 8, at 10 (1999) (noting that "the [30–day] time period begins to run on the date of the court order, which means that the practitioner cannot afford to wait for service of the order with notice of entry"); 1 Thomas R. Newman, *New York Appellate Practice* § 10.04[1] (1998); Mark Davies, *et al.*, *New York Civil Appellate Practice* § 19.3, at 499 (1996) (noting that the 30–day time period "runs from the appellate division decision, not from service of notice of entry of the decision"). Hence, even assuming that Section 600.14(a) permitted motions to reargue *coram nobis* motions, such a motion would have to be filed within 30 days of the order denying the *coram nobis* motion.[7]

In any event, we need not decide whether a motion for reargument of a *coram nobis* motion may be made in the First Department or, if so, whether a *coram nobis* motion remains pending during the 30–day period for moving for reargument thereof.[8] For the reasons explained below, even assuming that the one-year limitations period was tolled during the 30–day periods following the Appellate Division's denial of petitioner's *coram nobis* motions—thus reducing the undisputed elapsed time of 635 days to 575 days—petitioner's habeas petition would be untimely nonetheless because, at most, petitioner would be entitled to 194 days of equitable tolling for the time he spent in solitary confinement. Subtracting these 194 days from the 575–day running total would yield an elapsed time of 381 days— 16 days beyond the one-year limitations period.

## III. Equitable Tolling

■ Petitioner argues that the one-year limitations period should be tolled one day for each day he spent in solitary confinement without access to legal materials, specifically, 22 days for petitioner's solitary confinement between April 24, 1996 and May 16, 1996, and 194 days for his solitary confinement between November 20, 1997 and June 2, 1998.

---

7. Apparently accepting the force of this interpretation of Section 600.14(a), petitioner alternatively argues that, under First Department case law, "a motion for reargument in [the First Department] is timely made, even if it is beyond the 30–day period specified in [Section 600.14(a)], so long as it is made while a timely application for leave to appeal to the Court of Appeals is pending before a judge of the Court of Appeals." This argument is untenable because, as explained in section I above, petitioner's applications for leave to appeal the First Department's orders denying his *coram nobis* motions were absolute nullities. In contrast, the leave applications at issue in two of the three cases cited by petitioner appear to have been applications that could have been granted by the Court of Appeals. *See People v. Jones*, 128 A.D.2d 405, 407, 512 N.Y.S.2d 691 (1st Dep't), *aff'd*, 70 N.Y.2d 547, 523 N.Y.S.2d 53, 517 N.E.2d 865

(1987) (appeal of order affirming conviction for sale and possession of controlled substance); *People v. Walker*, 59 A.D.2d 852, 852, 401 N.Y.S.2d 68 (1st Dep't 1977) (appeal of order reversing conviction for possession of a weapon). The third case is inapposite because it formulates a special rule for "applications in criminal cases for a statement by this Court [the First Department] that particular contentions were presented to and rejected by this Court." *People v. Washington*, 75 A.D.2d 89, 91, 428 N.Y.S.2d 262 (1st Dep't 1980).

8. We note that a holding that a *coram nobis* motion remains pending for 30 days after the order denying it would be in some tension with our holding in *Geraci* that a *coram nobis* motion ceases to be pending on the date it is denied by the Appellate Division. *Geraci*, 211 F.3d at 9.

In *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.), *cert. denied,* 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 63 (2000), we held that AEDPA's "one-year period is a statute of limitations rather than a jurisdictional bar so that the courts may equitably toll the period." To equitably toll the one-year limitations period, a petitioner "must show that extraordinary circumstances prevented him from filing his petition on time," and he "must have acted with reasonable diligence throughout the period he seeks to toll." *Id.* To show that extraordinary circumstances "prevented" him from filing his petition on time, petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson,* 224 F.3d 129, 134 (2d Cir.2000). Hence, "[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file *after the extraordinary circumstances began,* the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Id.* (emphasis added). In a case where the alleged extraordinary circumstances ceased early in the limitations period, we inquire whether the petitioner diligently pursued his application in the time remaining.

The district court rejected petitioner's argument for equitable tolling on the grounds that (i) the deprivation of petitioner's access to legal materials did not qualify as an extraordinary circumstance because he was placed in solitary confinement "due to his own misbehavior," and (ii) petitioner failed to exercise reasonable diligence by "wait[ing] over 250 days before filing his first [*coram nobis* motion]." *Hizbullahankhamon,* 105 F.Supp.2d at 344.

Because we substantially agree with the district court's second ground, we do not reach the question of whether the deprivation of petitioner's legal materials and his access to law library materials could constitute an extraordinary circumstance warranting equitable tolling of the one-year limitations period. The record indicates that the deprivations in question were effected pursuant to the Rules of the New York State Department of Correctional Services. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 304.7(g) (2000) ("Inmates [in solitary confinement] may be deprived of law library services by issuance of a deprivation order ...."); *id.* § 305.2(a) ("An order depriving an inmate [in solitary confinement] of a specific item, privilege or service may be issued when it is determined that a threat to the safety or security of staff, inmates, or State property exists."). Although we are to "defer[] to the judgments of prison officials in upholding [such] regulations [even] against constitutional challenge" as long as the regulations are "reasonably related to legitimate penological interests," *Shaw v. Murphy,* 532 U.S. 223, 121 S.Ct. 1475, 1479, 149 L.Ed.2d 420 (2001) (internal quotation marks omitted), were we to determine, in an appropriate case, that the discretionary deprivation of a prisoner's access to his own legal materials and law library materials *prevented* a prisoner from petitioning for a writ of habeas corpus in federal court, we would be obliged to consider granting a request for equitable tolling in order to avoid the constitutional difficulty posed by such a denial of access to the federal courts. *See Frisby v. Schultz,* 487 U.S. 474, 483, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (instructing that "statutes [should]

be interpreted to avoid constitutional difficulties"). This is not such a case, however.

On the day petitioner's one-year limitations period began to run, April 25, 1996, petitioner was in solitary confinement where he was allegedly denied access to his legal files and the law library. He had been placed in solitary confinement on November 15, 1995, and was released on May 16, 1996, that is, 22 days into the one-year limitations period. Petitioner urges this Court equitably to toll the limitations period during this 22-day period. We decline to do so, however, because, even assuming that the alleged deprivation of access to his legal materials and the law library constituted an "extraordinary circumstance" warranting equitable tolling, petitioner cannot show that this extraordinary circumstance *prevented* him from filing a timely habeas petition. It cannot plausibly be said that, but for those 22 days at the very beginning of the one-year limitations period during which petitioner was allegedly denied access to legal materials, he would have been able to file his petition within the one-year limitations period.[9] *See Scott v. Johnson,* 227 F.3d 260, 263 (5th Cir.2000) (denying equitable tolling based on lack of diligence where petitioner had been denied access to legal materials for approximately six months but had regained access to legal materials six months prior to expiration of the limitations period), *cert. denied,* —— U.S. ——, 121 S.Ct. 1498, 149 L.Ed.2d 383 (2001); *cf. Gibson v. Klinger,* 232 F.3d 799, 808 (10th Cir.2000) (denying equitable tolling for lack of diligence because, among other reasons, petitioner failed to "demonstrate[ ] why he did

not ... file his federal habeas petition within the 185 days after the state appellate court affirmed the denial of his post-conviction application").

Our conclusion that petitioner is not entitled to 22 days of equitable tolling for the 22 days he spent in solitary confinement at the outset of the one-year limitations period proves fatal to petitioner's argument that his petition was timely filed. Even assuming that the one-year limitations period should be tolled one day for each of the 194 days he subsequently spent in solitary confinement between November 20, 1998 and June 2, 1999, subtraction of these 194 days from the undisputed elapsed time of 635 days yields a total of 441 days. As noted in the previous section, even if we were to then subtract another 60 days from this total in allowance for the two 30-day periods during which petitioner hypothetically could have moved for reargument of his *coram nobis* motions, the resulting elapsed time of 381 days would nonetheless exceed the limitations period by 16 days.

## CONCLUSION

We have considered petitioner's remaining arguments and find them to be without merit. For the reasons discussed, the judgment of the district court dismissing the petition for a writ of habeas corpus is hereby affirmed.

---

**9.** Contrary to petitioner's suggestion, this conclusion is fully consistent with our statement in *Valverde* that "[a] petitioner should not be faulted ... for failing to file early or to take other extraordinary precautions early in the limitations period against what are, by definition, rare and exceptional circumstances that

occur later in that period." *Valverde,* 224 F.3d at 136. This statement clearly does not apply to situations, such as that under discussion here, in which the extraordinary circumstances occur at the beginning of the limitations period.