# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 15, 2020

Lyle W. Cayce
Clerk

No. 18-30374

COLBY DRANOEL LEONARD,

> Petitioner - Appellant

v.

KEITH DEVILLE, WARDEN, WINN CORRECTIONAL CENTER,

> Respondent - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana

ON PETITION FOR REHEARING

STUART KYLE DUNCAN, Circuit Judge:

Treating the petition for *en banc* rehearing as a petition for panel rehearing, we grant rehearing, withdraw our opinion dated February 3, 2020, and substitute the following opinion:

Colby Leonard, a Louisiana state prisoner, appeals the district court's dismissal of his 28 U.S.C. § 2254 petition as time-barred. Leonard was granted a Certificate of Appealability ("COA") to consider whether he was entitled to statutory tolling of the federal limitation period pursuant to 28 U.S.C. § 2244(d)(2). The specific issue, which has divided federal district courts in

No. 18-30374

Louisiana, is this: when a state prisoner is implicitly granted extra time to seek supervisory writs from the denial of his state post-conviction application—and he does so within that time—does his initial application therefore remain "pending" under the tolling provision in § 2244(d)(2)? We hold that the answer is yes, a conclusion dictated by our own precedents and by the Supreme Court's teaching that a state post-conviction application remains "pending" for statutory tolling purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219–20 (2002). Concluding that Leonard was entitled to statutory tolling and that his petition was therefore not time-barred, we vacate the district court's dismissal and remand for further proceedings.

I.

Leonard was convicted of armed robbery under Louisiana law in 2008. His conviction was affirmed on direct appeal in March 2009, and the Louisiana Supreme Court denied review January 8, 2010. *State v. Leonard*, 24 So.3d 859 (La. 2010). The time for seeking certiorari from the United States Supreme Court expired April 8, 2010. S. Ct. Rule 13. Leonard then waited 308 days, until February 10, 2011, to apply to the state trial court for post-conviction relief ("PCR"), which was dismissed "as without merit" May 1, 2013. On May 23, 2013, he applied to a state appellate court for supervisory writs, which were denied August 27, 2013. The appellate court found Leonard failed to include supporting record materials as required by court rules. *State v. Leonard*, 2013 WL 12120742, at *1 (La. App. 1 Cir. Aug. 27, 2013) (unpublished); *see* La. Unif. Ct. App. Rule 4-5. The court prohibited Leonard from supplementing his application or seeking rehearing. *Id.* (citing La. Unif. Ct. App. Rules 2-18.7 & 4-9). However, the court also ruled that, "[i]n the event [Leonard] elects to file a new application with this Court, the application must be filed on or before October 22, 2013." *Id.* Leonard filed a properly-supported writ application

2

No. 18-30374

September 12, 2013, which was denied February 27, 2014. On March 19, 2014, he sought review from the Louisiana Supreme Court, which was denied January 9, 2015. *State ex rel. Leonard v. State*, 157 So.3d 591 (La. 2015).

On February 4, 2015, Leonard filed a federal habeas corpus application. The magistrate judge recommended denying the application as untimely under the one-year limitation period. *See* 28 U.S.C. § 2244(d)(1). That conclusion was based on the following calculations. The magistrate judge determined that the federal clock started running when Leonard's conviction became final April 8, 2010. *See id.* § 2244(d)(1)(A) (period runs from "the conclusion of direct review or the expiration of the time for seeking such review"). The clock ticked from April 9, 2010 until the filing of Leonard's state PCR application February 10, 2011 (308 days), but then paused until May 31, 2013—that is, until the trial court denied the PCR application May 1, 2013, and the 30-day period for seeking review of that decision had elapsed.[1] The clock then began to run again June 1, 2013. Consequently, the magistrate judge concluded that the one-year limitation period expired long before Leonard filed his federal petition February 4, 2015.[2]

Additionally, the magistrate judge found that Leonard's writ application to the state appellate court—filed May 23, 2013, and denied August 27, 2013— did not toll the federal clock because the appellate court found the application was not "properly filed." *See id.* § 2244(d)(2). As for the appellate court's setting a later date for filing another application, the magistrate judge noted that the

---

[1] *See id.* § 2244(d)(2) (period tolled while properly-filed state post-conviction application is "pending"); *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001) (post-conviction application remains "pending" under § 2244(d)(2) until time expires under state law for seeking review of trial court judgment); La. Unif. Ct. App. Rule 4-3.

[2] Specifically, the period expired July 27, 2013—fifty-seven days after the clock began running again on June 1, 2013.

No. 18-30374

law was "unclear" whether that "effectively amounted to an extension of time that operated to toll the limitation period."[3] The magistrate reasoned, however, that resolving that question was unnecessary because any tolling from the putative extension would have made no difference to the timeliness of Leonard's federal application.

Over Leonard's objections, the district court adopted the magistrate's recommendation and dismissed Leonard's petition as time-barred. The district court denied Leonard a COA. He sought a COA from our court, which was granted December 17, 2018.

## II.

We review *de novo* the district court's ruling that a habeas corpus petition was untimely. *Emerson v. Johnson*, 243 F.3d 931, 932 (5th Cir. 2001) (citation omitted).

## III.

Leonard sought a COA to contest the district court's ruling that his federal habeas application was time-barred. A COA was granted on the following question:

> Because it is arguable that the state court implicitly granted an extension of time within which to file a properly supported writ application, jurists of reason could debate whether the district court erred in determining that the limitation period was not continuously tolled during the pendency of the state post-conviction proceedings. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Grillette v. Warden, Winn Corr. Ctr.*, 372 F.3d 765, 769–76 (5th Cir. 2004).

---

[3] The magistrate noted that some district court decisions had interpreted such an action by a state appellate court as an "implicit" grant of an extension of time to file a writ application. *See, e.g., Roberts v. Cain*, 2015 WL 7080546, at *2 (E.D. La. Nov. 13, 2015); *Holton v. Cain*, 2014 WL 3189737, at *6 (M.D. La. July 8, 2014). At least one decision, however, had reached a different conclusion, albeit "without discussion." *See Howard v. Cain*, 2011 WL 3794909, at *4 (M.D. La. Aug. 2, 2011).

4

No. 18-30374

Leonard filed a *pro se* appellate brief arguing, in effect, that (1) the state appellate court gave him extra time to file a proper writ contesting the denial of his state PCR application, (2) he did so within that extra time, and (3) therefore, his original state PCR application remained "pending," continuously tolling the one-year limitations period and making his federal petition timely. *See, e.g., Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012) ("We give *pro se* briefs a liberal construction." (citation omitted)).

Under 28 U.S.C. § 2244(d)(1), "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." The one-year period is statutorily tolled during the time that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2); *see also Wood v. Milyard*, 566 U.S. 463, 468–69 (2012). As the text of § 2244(d)(2) provides, a state post-conviction application triggers statutory tolling only if it is "properly filed" and only while it remains "pending." *See, e.g., Larry v. Dretke*, 361 F.3d 890, 893 (5th Cir. 2004) (explaining a habeas petition may be "*pending*, but not *properly filed*") (quoting *Artuz v. Bennett*, 531 U.S. 4, 9 (2000)). "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Id.* (quoting *Artuz*, 531 U.S. at 8). An "application is pending as long as the ordinary state collateral review process is 'in continuance.'" *Saffold*, 536 U.S. at 219–20.

It is uncontested that Leonard's state PCR application was "properly filed" within the meaning of § 2244(d)(2). Under Louisiana law, a prisoner may file a PCR application in the district court for the parish where he was convicted. *See* La. Code Crim. Proc. art. 926(A); *see also* La. Unif. Ct. App. Rules, App. A (Uniform Application for Post-Conviction Relief). Leonard filed a PCR application in the 19th Judicial District Court for East Baton Rouge

Parish on February 10, 2011. Nothing in the record suggests Leonard's application failed to "compl[y] with the applicable laws and rules governing filing," *Larry*, 361 F.3d at 893, which would have made it improperly filed under § 2244(d)(2). To the contrary, the state opposed all of Leonard's nineteen claims as either procedurally barred or without merit; the commissioner recommended dismissal of his claims "without merit" ; and the trial court accordingly "dismissed" Leonard's application "as without merit." *Cf. id.* (explaining that "whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar") (quoting *Artuz*, 531 U.S. at 9). Moreover, the state appellate court's subsequent dismissal of Leonard's first writ application also fails to suggest that Leonard's PCR application was not "properly filed" in district court. As explained, the appellate court ruled that Leonard's writ application failed to follow a rule governing the required contents of filings in *appellate* courts. *See* La. Unif. Ct. App. Rule 4-5(A), (C) (setting out items required in an "original application for writs" in the courts of appeal).

Because Leonard's PCR application was "properly filed," it therefore tolled the federal limitations period under § 2244(d)(2) as long as the application remained "pending." How long his application remained pending is the key issue in this appeal. If the application remained pending from its initial filing date of February 10, 2011, until the Louisiana Supreme Court's denial of review on January 9, 2015, then all of that intervening time "shall not be counted" towards the running of the one-year limitations period. § 2244(d)(2). But the district court, adopting the magistrate judge's recommendation, ruled that Leonard's application did *not* remain pending because the state appellate court dismissed his first writ application as improperly filed. Leonard contends, to the contrary, that the state appellate court simultaneously

extended his time to file a proper writ application, keeping his PCR application "pending" the entire time. This presents a thorny procedural question on which federal district courts in Louisiana have reached differing conclusions.[4]

We begin our analysis by observing that the Supreme Court has explained what it means for a state post-conviction application to remain "pending" for purposes of § 2244(d)(2):

> [A]n application is pending as long as the ordinary state collateral review process is "in continuance"—*i.e.*, "until the completion of" that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains "pending."

*Saffold*, 536 U.S. at 219–20; *see also*, *e.g.*, *Grillette*, 372 F.3d at 769 (observing *Saffold* "clarified" that a state habeas application is "pending, in the context of § 2244(d)(2), as long as the ordinary state collateral review process is 'in continuance'") (cleaned up). This capacious understanding of the pendency requirement, *Saffold* explained, promotes federal-state comity by requiring a federal habeas petitioner to "invoke[e] one complete round of the State's established appellate review process," thereby giving state courts the first crack at correcting any constitutional problems. *Saffold*, 536 U.S. at 221 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)) (cleaned up).

For purposes of this appeal, then, the determinative question is whether Leonard's state post-conviction process remained "in continuance" from the February 10, 2011 filing of his PCR application in the trial court until the

---

[4] *Compare, e.g., Clarke v. Rader*, 2012 WL 589207, at *2–6 (M.D. La. Jan. 20, 2012) (finding initial PCR application did not remain "pending" given appellate court's dismissal of improper writ application, despite prisoner being given extension to file proper writ application), *aff'd on other grounds by Clarke v. Rader*, 721 F.3d 339, 343–44 (5th Cir. 2013); *Howard*, 2011 WL 3794909, at *1–4 (same), *with Holton*, 2014 WL 3189737, at *6 (concluding initial PCR application remained "pending," despite appellate court's dismissal of improper writ application, because appellate court extended time for filing proper writ application) (citing *Dixon v. Cain,* 316 F.3d 553, 554 (5th Cir. 2003)).

No. 18-30374

Louisiana Supreme Court's denial of review on January 9, 2015. *Saffold*, 536 U.S. at 219–20; *Grillette*, 372 F.3d at 769. The district court answered in the negative, given that the state appellate court dismissed as procedurally flawed Leonard's first supervisory writ application. Based on our analysis, however, we are persuaded that this conclusion was mistaken.

At the same time as it dismissed Leonard's first writ application, the state appellate court expressly allowed Leonard to file a new application "on or before October 22, 2013." We understand the appellate court's action as extending the time for Leonard to seek review of the trial court's dismissal of his PCR application. Under Louisiana law, a prisoner may seek review of the dismissal of a PCR application, not by appeal, but instead by "[i]nvoking the supervisory jurisdiction of the court of appeal." La. Code Crim. Proc. art. 930.6(A). Typically, a prisoner must seek supervisory review no more than 30 days from the date of the trial court's ruling. *See* La. Unif. Ct. App. Rule 4-3; *see also Dixon v. Cain*, 316 F.3d 553, 555 (5th Cir. 2003) (observing that "Rule 4-3 of Louisiana's Uniform Rules, Courts of Appeal, provides that the trial court must state 'a reasonable time,' 'not to exceed thirty days,' in which the applicant must apply to the appellate court."). Nonetheless, either the trial court or the appellate court "may extend the time for filing the application upon the filing of a motion" within the return period. *Dixon*, 316 F.3d at 555 (discussing Rule 4-3); *see also Brock v. Duhe*, 521 So.2d 1162, 1162 (La. 1988); *State v. Bourg*, 196 So.3d 737, 741–42 (La. App. 5th Cir. 2016) (same). Here, the only logical reading of the appellate court's action is that it granted Leonard an extension of time for filing a proper writ application, either *sua sponte* or because the court construed Leonard's flawed-but-timely first application as a request for more time. *See State v. Goppelt*, 993 So.2d 1188, 1189 (La. 2008) (per curiam) (explaining that the Rule 4-3 timeliness bar "should be sparingly applied" where defendant does not "unreasonably delay"

8

No. 18-30374

in seeking supervisory review). In any event, the State concedes on appeal that the appellate court "allowed [Leonard] additional time to file a new application."

In light of the appellate court's extension of time—and Leonard's filing a proper writ application within that period—we conclude that Leonard's state post-conviction process remained "in continuance" and therefore "pending" under § 2244(b)(2). *See Saffold*, 536 U.S. at 219–20; *Dixon*, 316 F.3d at 556.

This conclusion follows from our cases interpreting the "pendency" requirement in § 2244(b)(2). Of particular relevance is our decision in *Grillette*, *see* 372 F.3d at 769–73, where we reviewed our precedents in light of the clarification provided by the Supreme Court in *Saffold*. We first observed that a state post-conviction application remains "pending"—thus tolling the one-year period—"during the interval between a state trial court's disposition of the habeas application and the applicant's '*timely* filing of a notice of appeal (or petition for review) in the next court.'" *Grillette*, 372 F.3d at 770 (quoting *Saffold*, 536 U.S. at 219) (emphasis added). The negative implication from this rule is plain: if a prisoner fails to *timely* seek appellate review of the denial of his post-conviction application, then his application is no longer "pending" and ceases to have tolling effect for purposes of § 2244(d)(2). *See id.* at 771 (explaining that "a state [habeas] application ceases to be pending when the time for appellate review expires") (citing *Saffold*, 536 U.S. at 226).

*Grillette* then explored the implications of this rule for Louisiana's post-conviction review scheme—which, as discussed, generally requires a prisoner to seek supervisory review of the trial court's decision within 30 days. *See* La. Unif. Ct. App. Rule 4-3. Our court noted, for example, that if the trial court "impliedly" extends the 30-day period for seeking review in response to a prisoner's motion, then the prisoner's seeking a writ within the extended time suffices to keep his post-conviction process "pending" under § 2244(d)(2). *See*

9

*Grillette*, 372 F.3d at 771–73 (discussing *Dixon*, 316 F.3d at 556); *see also Dixon*, 316 F.3d at 555 (explaining that "Louisiana courts consider the trial court's setting of a return date later than thirty days to be an implicit extension . . . in accordance with Rule 4-3) (citing *Brock*, 521 So.2d at 1162). Our court applied that principle in *Grillette*, finding that the trial court agreed to set a return date far longer than the usual 30-day period, even when the prisoner merely gave "oral notice" of his intent to seek writs but did not move for an extension. *See* 372 F.3d at 773–74. While that procedure may not have complied with the letter of Rule 4-3, our court reasoned that Louisiana courts would not "penalize" applicants who sought writs after the 30-day period in reliance on the trial court's later return date. *See id.* at 774–75 (discussing Louisiana decisions). Our court also relied on the fact that the appellate court "consider[ed] the merits" of the writ application and "at no point" suggested the application was untimely. *See id.* at 775 (observing that, "when the denial of an application is based on untimeliness, Louisiana courts routinely and unmistakably indicate so in their opinions") (and collecting decisions). Consequently, we ruled that Grillette's "[state] application was never in an untimely status and remained 'pending'" until ultimately denied by the Louisiana Supreme Court, thus tolling the federal limitations period during all the intervening time. *Id.* at 776.

Rounding out our precedents is our decision in *Melancon v. Kaylo*, 259 F.3d 401 (5th Cir. 2001). *See Grillette*, 372 F.3d at 772 (discussing *Melancon*). There, we concluded that a state post-conviction application "ceased to be pending" because "at no time during [the 30-day period of Rule 4-3] had Melancon given notice of his intent to seek a writ, asked the court to set a return date, or requested an extension on the return date." *Id.*; *see Melancon*, 259 F.3d at 407. Melancon, we pointed out, "did not give notice of his intent to seek a writ until sometime well after Rule 4-3's 30-day deadline had expired,"

and only at that point did the trial court set a return date for seeking review. *Grillette*, 372 F.3d at 772 (discussing *Melancon*). Furthermore, although the appellate court did consider Melancon's subsequent writ application on the merits, it noted the application "'appeared to be untimely' because there was no indication that any extension on the return date had been granted." *Id.* (quoting *State v. Melancon*, No. 98-K-1139 (La. Ct. App. 4th Cir. Aug. 13, 1998) (unpublished)); *see also Melancon*, 259 F.3d at 403 (observing appellate court "considered the merits" but "suggested that Melancon's application was untimely").

Applying these complex precedents to the present appeal yields the result that Leonard's PCR application was "never in an untimely status," *Grillette*, 372 F.3d at 772 (quotation marks omitted), until it was ultimately denied by the Louisiana Supreme Court January 9, 2015. Like the applicants in *Grillette* and *Dixon*, Leonard was granted an extension to file a supervisory writ application beyond the normal 30-day period of Rule 4-3. It makes no difference that Leonard's extension came from the appellate court instead of the trial court, because Rule 4-3 provides that either "the trial court or the appellate court may extend the time for filing the [writ] application." It also makes no difference that Leonard never expressly asked for an extension: neither did Grillette, but in that case we nonetheless found that the prisoner benefited from the extended return date. *See Grillette*, 372 F.3d at 774 (rejecting argument that, "because Grillette, like Melancon, never *requested* an extended return date, he could not have obtained an extension" under Rule 4-3). Finally, *Melancon* does not compel a different result for several reasons. Leonard received an extension of time to file beyond the 30-day period; Melancon did not. *Cf. Melancon*, 259 F.3d at 407 (noting Melancon "failed to obtain an extension"); *see also Dixon*, 316 F.3d at 556 (same). Leonard made a filing within the original 30-day period, whereas Melancon filed nothing during

that period. *Cf. Melancon*, 259 F.3d at 403 (noting Melancon's writ application was "approximately five months" late under Rule 4-3). In other words, unlike Melancon, at the expiration of the original 30-day period Leonard had a pending writ application which, although defective, still provided the basis for the appellate court's extension. *Cf. Dixon*, 316 F.3d at 556 (observing that, at the end of the 30-day period in *Melancon*, "no supervisory writ application had been filed"). Finally, unlike in *Melancon*, the appellate court here did not suggest that Leonard's writ application was untimely—which would have been strange given the same court had earlier authorized Leonard's extension. *Cf. Grillette*, 372 F.3d at 772 (observing appellate court "noted that [Melancon's] writ application 'appeared to be untimely' because there was no indication that any extension on the return date had been granted") (citation omitted).

It is not surprising that the magistrate judge and district judge could arrive at a different result in finding that Leonard could not benefit from statutory tolling. Our precedents from *Melancon* to *Dixon* to *Grillette* do not chart the clearest path. The touchstone, however, must be the Supreme Court's teaching that a state post-conviction application remains "pending" within the meaning of § 2244(d)(2) "as long as the ordinary state collateral review process is 'in continuance'"—that is, "until the application has achieved final resolution through the State's post-conviction procedures." *Saffold*, 536 U.S. at 219–20. Under that standard, we see no gaps in Leonard's state post-conviction process—in other words, the process remained "in continuance"—because (1) Leonard received an extension of time within which to seek supervisory review of the trial court's denial of his PCR application, and (2) he filed his supervisory writ application within that extended time. Consequently, at no time was Leonard's PCR application "in an untimely status," like the applications in *Grillette* and *Dixon*, and in contrast to the application in *Melancon. See Grillette*, 372 F.3d at 722 (explaining that Melancon's

application was "in an untimely status" due to his failure to seek or obtain an extension within the 30-day period). And Leonard's application "achieved final resolution" only when the Louisiana Supreme Court denied review January 9, 2015.

In reaching a contrary conclusion, the district and magistrate judges focused on the fact that Leonard's first writ application to the appellate court was not "properly filed" under Louisiana rules. That analysis, to be sure, is often followed by federal district courts in Louisiana.[5] Circuit courts, however, disagree over whether the "properly filed" inquiry under § 2244(d)(2) focuses only on the *initial* habeas application or *also* on subsequent filings in the habeas process.[6] For example, the Second Circuit reasons that, once it is determined that the "initial [habeas] application was 'properly filed,' the 'properly filed' inquiry comes to an end." *Hizbullahankhamon v. Walker*, 255 F.3d 65, 70 (2d Cir. 2001) (quoting § 2244(d)(2)). Further analysis would ask only whether that initial application remained "pending." *Id.* That approach would seem to honor the text of § 2244(d)(2), which refers only to a single habeas "application," and not to multiple "applications" throughout the habeas process. In one decision however, our court concluded that an untimely supervisory review application to the Louisiana Supreme Court was not

---

[5] *See, e.g., Staden v. Poret*, 2019 WL 3022192, at *2 n.3 (M.D. La. July 10, 2019) (collecting decisions focusing on whether supervisory writ applications are "properly filed" for tolling purposes); *George v. Cain*, 2014 WL 535711, at *3 (W.D. La. Feb. 7, 2014) (same); *Mark v. Michael*, 2008 WL 4365929, at *3 n.18 (E.D. La. Sept. 23, 2008) (same); *but see Holton v. Cain*, 2014 WL 3189737, at *6–7 (M.D. La. July 8, 2014) (concluding initial PCR application "remained 'not only timely filed but never in an untimely status,'" where appeals court dismissed flawed writ application but "implicitly" granted petitioner extra time to file proper writ application) (quoting *Dixon*, 316 F.3d at 556).

[6] *Compare Hizbullahankhamon v. Walker*, 255 F.3d 65, 70 (2d Cir. 2001) ("properly filed" inquiry under § 2244(d)(2) applies only to "the initial [state habeas] application"), *with Wright v. Norris*, 299 F.3d 926, 928 (8th Cir. 2002) (inquiring whether untimely motion for appeal to Arkansas Supreme Court to review denial of habeas application was "properly filed" under § 2244(d)(2)).

No. 18-30374

"properly filed" under § 2244(d)(2). *Williams v. Cain*, 217 F.3d 303, 306–09 (5th Cir. 2000). *Williams*, however, was decided before the Supreme Court in *Safford* "clarified" the operation of § 2244(d)(2) in the state habeas context. *See Grillette*, 372 F.3d at 769.

We need not decide in this case whether the reasoning in *Williams* was affected by *Saffold*. As explained above, our post-*Saffold* precedents—specifically, *Grillette* and *Dixon*—stand for the proposition that, if a prisoner receives extra time to seek review of the denial of his initial habeas application (and does so), then that application remains "pending" for purposes of § 2244(d)(2). That is what occurred here. It was thus immaterial that Leonard's first writ application to the appellate court was flawed, given that he received an extension to file another writ and thereby continued his PCR process until ultimate disposition by the Louisiana Supreme Court.

\*\*\*

In sum, we conclude that Leonard's state PCR application remained "pending" from February 10, 2011 (when it was filed in the trial court) until January 9, 2015 (when it was finally denied by the Louisiana Supreme Court). The application's pendency was not interrupted by Leonard's filing an improper supervisory writ application—but only because the state appellate court simultaneously granted Leonard additional time to file a proper writ application, which he did. Therefore, all of the intervening time between February 10, 2011 and January 9, 2015 "shall not be counted" toward the running of the one-year limitations period in § 2244(d)(1). *See* § 2244(d)(2). When Leonard filed his state PCR application, 308 days had already elapsed on his federal clock. When the clock began running again January 10, 2015,

14

No. 18-30374

another 26 days elapsed before Leonard filed his federal habeas application February 4, 2015. Leonard's federal application was therefore timely.[7]

The district court's judgment is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

---

[7] The magistrate judge reasoned that the statutory tolling issue need not be considered because any tolling resulting from the extension of time would not have made Leonard's federal application timely. We disagree. As explained, the fact that the extension resulted in keeping Leonard's initial PCR application "pending" means that *all* of the time from its filing in the trial court until its dismissal by the Louisiana Supreme Court is not counted towards the one-year federal limitations period. *See* § 2244(d)(2). Not counting the period from February 10, 2011 to January 9, 2015 means that only 334 days elapsed before Leonard filed his federal petition, making it timely under § 2244(d)(1).