BETTY McMAHON, Individually and as Administratrix of the Estate of THOMAS McMAHON, Deceased, Respondent, et al., Plaintiffs, v CITY OF NEW YORK, Appellant, et al., Defendants.

First Department, December 18, 1984

#### APPEARANCES OF COUNSEL

*Emilio Nunez* of counsel (*Harry H. Lipsig, Pamela Anagnos Liapakis* and *Cheryl R. Eisberg* with him on the brief; *Lipsig, Sullivan & Liapakis, P.C.,* attorneys), for respondent.

*Alfred Weinstein* of counsel (*Leonard Koerner* with him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellant.

#### OPINION OF THE COURT

SILVERMAN, J.

This is an appeal from (a) an order of the Supreme Court, Special Term, which denied a postjudgment motion by defen-

dant City of New York to vacate a judgment previously entered against it in favor of plaintiffs for $555,898, and to dismiss the complaint, and (b) further from said judgment as amended. The ground of the motion was the subsequent reversal by the Court of Appeals in a companion case of the interlocutory judgment of liability on which the final judgment was based (*O'Connor v City of New York*, 58 NY2d 184). We would reverse the order appealed from and grant the city's motion to vacate the judgment and dismiss the complaint.

This case arises out of the tragic Ann Street explosion of December 11, 1970. Forty-two negligence actions for wrongful death, personal injury and property damage arose out of that explosion. Various aspects of the cases are reported in *Gannon Personnel Agency v City of New York* (57 AD2d 538; 103 Misc 2d 60, affd 81 AD2d 755, revd *sub nom. O'Connor v City of New York*, 58 NY2d 184, *supra*).

The 42 cases were tried jointly and resulted in interlocutory judgments of liability against the City of New York among others, which were affirmed by this court on April 9, 1981 (*Gannon Personnel Agency v City of New York*, 81 AD2d 755, *supra*). Although the city was held to be only 4% liable, the insolvency of some of the defendants and prefinal judgment settlements by others meant that the city would have to bear the largest share of any ultimate recovery. After the interlocutory judgments of liability, proceedings were taken separately to fix the amount of damages as to the particular plaintiffs.

After the damages in favor of the *O'Connor* plaintiffs were determined and a final judgment entered as to them on that case on March 5, 1982, the city took a direct appeal to the Court of Appeals, which reversed the *O'Connor* judgment on the issue of liability, and dismissed the complaint. (*O'Connor v City of New York*, 58 NY2d 184, *supra*.)

In the meantime, a trial was held on the issue of damages with respect to the McMahons (plaintiffs in the present case) which resulted in a final judgment (as amd Dec. 6, 1983) in favor of the McMahons against the city of $416,924 on the personal injury claim of the estate of the deceased, Thomas McMahon, and $138,974 on his wife's claim for loss of consortium. That judgment was originally entered on May 19, 1982, a few days after the Court of Appeals had granted leave to appeal in the *O'Connor* case (*supra*). The city appealed to this court from the final judgment in the *McMahon* case. The city did not however take any further steps toward prosecuting the *McMahon* appeal during the pendency of the *O'Connor* appeal to the Court of Appeals.

On February 23, 1983, the Court of Appeals reversed the *O'Connor* judgment and held the city not liable. Obviously, the Court of Appeals ruling would be binding in all the cases arising out of the explosion in which the question was still open. Indeed, in *O'Connor* (p 195) the Court of Appeals reversed "the order of the Appellate Division brought up for review", i.e., the interlocutory judgment of liability in *Gannon Personnel Agency v City of New York* (81 AD2d 755, *supra*) that the city was liable to all plaintiffs including the McMahons.

The decision of the Court of Appeals in *O'Connor* was just two days before the expiration in the *McMahon* case of the nine-month period fixed by section 600.11 (a) (3) of our rules (22 NYCRR) for perfecting appeals. Two days later on February 25, 1983 the city moved in the *McMahon* case for reargument of the decision of April 9, 1981, the interlocutory judgment of liability, on the basis of the decision of the Court of Appeals in the *O'Connor* case, or for an extension of time to perfect its appeal from the final judgment. This court by order of June 2, 1983 denied the motion "without prejudice to applications for appropriate post-judgment relief in the Supreme Court in light of *O'Connor v. City of New York*, (58 N Y 2d 184)."

Thereafter, plaintiffs moved to dismiss the appeal in this court for failure to prosecute under the nine-month rule, and this court granted the motion on July 7, 1983.

On July 22, 1983, the city moved at Special Term to vacate the judgment in the *McMahon* case pursuant to CPLR 5015 (subd [a], par 5) "based upon the reversal of a prior judgment upon which the within judgment was based." That motion was denied by Special Term and this appeal is from that denial.

It is clear that the final judgment in this case holds the city liable for over $550,000 damages in a case in which, as a matter of law as established by the *O'Connor* decision (*supra*), the city should not be liable at all.

However, Special Term has held that the procedural history of the case has frozen the city into a position where it can no longer attack a judgment which should never have been rendered against it. We do not agree for these reasons:

At the time that the Court of Appeals rendered its decision in the *O'Connor* case, determining that the city was not liable for damages arising out of the Ann Street explosion, the *McMahon* case was still in the direct appeal process. In denying the city's motion for an extension of time and reargument of the order affirming the interlocutory judgment of liability, we explicitly said that our denial was "without prejudice to applications for

appropriate post-judgment relief in the Supreme Court in light of *O'Connor v. City of New York,* (58 N Y 2d 184)." There has never been a moment from the time of the explosion until today when the plaintiffs were not under legal notice that their claim of the city's liability, and any interlocutory or final judgments as to the city's liability, were still subject to review. Both the trial court and this court have inherent power, as well as statutory power under CPLR 5015, to set aside a judgment on appropriate grounds.

The appeal from the final judgment in this case, which was still pending at the time of the decision in the *O'Connor* case (*supra*), would have brought up for review the interlocutory judgments of liability (CPLR 5501, subd [a], par 1). It may be that under the express language of CPLR 5501 this court, having previously affirmed the interlocutory judgment of liability, could not again review that judgment. (But cf. *Aridas v Caserta,* 41 NY2d 1059, 1061 ["Every court retains a continuing jurisdiction generally to reconsider any prior intermediate determination it has made"].) But clearly the Court of Appeals, never having previously reviewed the issue of liability in the *McMahon* case, could have done so on the appeal from the final judgment — as it did in the *O'Connor* case. To be sure, such a procedure would have involved the rather cumbersome process of this court having to hear the appeal and to affirm the final judgment which it knew to be wrong, and then granting leave to go to the Court of Appeals. Further, under rule 600.14 (a) of this court (22 NYCRR), motions for reargument have to be made within 30 days after the appeal has been decided. (But cf. *Matter of Supreme Burglar Alarm Corp. v Kaplan,* 75 AD2d 584, affd 53 NY2d 660.) Here, the motion for reargument was made 25 months after this court's decision affirming the interlocutory judgment of liability. As noted above, this court denied reargument and an extension of time to perfect the appeal. But it did so expressly without prejudice to applications for appropriate post-judgment relief in the Supreme Court in the light of *O'Connor.* Thereafter, we dismissed the appeal.

The city availed itself of our "without prejudice" provision and made its motion in the Supreme Court for appropriate postjudgment relief. And Special Term denied that motion on the ground of our dismissal of the appeal.

By our dismissal of the appeal, we obviously did not nullify the "without prejudice" provision of the order of June 2, 1983 denying extension and reargument. Indeed, in her affidavit in connection with the motion to dismiss in this court, plaintiff's

attorney said: "Plaintiff is entitled to a dismissal of defendants' appeal by reason of the City's failure to comply with the time requirements for perfection of same as set by the rules of this Court. The City has clearly not prosecuted its appeal diligently and, accordingly, is properly left to whatever post-judgment relief it can obtain from the Supreme Court." The dismissal merely followed from the denial of the extension. When we said that we were denying the city's motion without prejudice to applications for appropriate postjudgment relief in the Supreme Court, we did not assure defendant city that its motion in the Supreme Court would be granted, but we surely stated that our determination should not bar granting such a motion. We were not playing games or making an empty gesture. "The judgment * * * being expressly recited to be 'without prejudice,' is not *res judicata* as to this claim * * * [T]he phrase 'without prejudice' literally and precisely means that the judgment in the first action shall not prejudice, i.e., bar, the later action." (*City of New York v Caristo Constr. Corp.*, 94 AD2d 688, 689, affd 62 NY2d 819.)

"The explicit 'without prejudice' provision, however, saves the claim from such preclusion." (*City of New York v Caristo Constr. Corp.*, 62 NY2d 819, 821, *supra;* see, also, Restatement, Judgments 2d, § 26, subd [1], par [b], and Comment *b* thereunder.)

This court's intimation that the city could have a remedy by postjudgment motion in the Supreme Court was clearly correct. Indeed, at one time that would have been the only remedy. "The only relief a party against whom a judgment which has been subsequently reversed has thus been received in evidence can have is to move on that fact in the court of original jurisdiction for a new trial, and then the court can, in the exercise of its discretion, grant or refuse a new trial, as justice may require." (*Parkhurst v Berdell*, 110 NY 386, 392-393.) While that is apparently no longer the only remedy (see *Halpern v Amtorg Trading Corp.*, 292 NY 42, 48), it still appears to be an available remedy.

CPLR 5015 expressly preserves the power of the court to relieve parties from a judgment, though not perhaps on the precise grounds here involved. However, that rule does not exhaust the court's power to relieve parties. "The whole power of the court to relieve from judgments taken through 'mistake, inadvertence, surprise or excusable neglect,' is not limited by section 724 [predecessor of CPLR 5015]; but in the exercise of its control over its judgment it may open them upon the application of anyone for sufficient reason, in the furtherance of justice. Its

power to do so does not depend upon any statute, but is inherent, and it would be quite unfortunate if it did not possess it to the fullest extent." (*Ladd v Stevenson,* 112 NY 325, 332.)

That inherent power has been retained, and is not subject to the one-year limitation of CPLR 5015 (subd [a], par 1). (See Siegel, Practice Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR 5015, pp 578, 580; Third Preliminary Report of the Advisory Committee on Practice and Procedure, NY Legis Doc, 1959, No. 17, p 204.) This is an appropriate case for the exercise of the court's inherent power in the furtherance of justice, not to let a judgment stand which should never have been rendered.

Procedurally, the city did not seek leave to appeal directly to the Court of Appeals from the final judgment in the *McMahon* case, as it did in the *O'Connor* case, because it was questioning the amount of the damages in the *McMahon* case which the Court of Appeals could not review, as well as liability which of course the Court of Appeals could review. As the Court of Appeals had granted leave to appeal in the *O'Connor* case, so that the issue of liability was going to be reviewed by that court, the city awaited that determination rather than burdening itself and this court with the appeal on the issue of damages, and perhaps a further appeal to the Court of Appeals, which might all become unnecessary in the event of a decision favorable to the city in the *O'Connor* appeal. As it turns out, that was a mistake. But it was at least understandable, and in our view, it was at worst an excusable default or neglect. (See CPLR 5015, subd [a], par 1.)

The authorities relied upon by the trial court as preventing the grant of relief in the present case are all validly distinguishable and thus inapplicable. None of them involve a situation like the present case where at the time the supervening judgment of the highest court was rendered, a direct appeal was still pending from the final judgment in the other appeal (here the *McMahon* case) and the issues were still subject to review on that appeal, and where the dismissal of the appeal was pursuant to an order denying extension or reargument expressly stated to be "without prejudice" to an appropriate postjudgment application for relief in the Supreme Court precisely in the light of the supervening decision of the highest court.

In *Matter of Huie (Furman)* (20 NY2d 568), the final judgment sought to be vacated on reargument had been rendered five years before a later decision of the United States Supreme Court the other way. No appeal had been taken from the earlier

judgment, so that for five years no appeal was pending and the earlier judgment was not subject to review. The court said (p 572): "Absent the sort of circumstances mentioned in CPLR 5015, such as newly discovered evidence, fraud, lack of jurisdiction, etc., a determination of a court *from which no appeal has been taken* ought to remain inviolate." (Emphasis added.)

But even in *Huie,* distinguishing a case in which the Wisconsin Supreme Court had vacated an earlier judgment on reargument, the Court of Appeals said (p 573): "As the statement of the case the second time it was before the Wisconsin Supreme Court reveals, however, upon the original remand the plaintiff had obtained leave of court to plead over and the case was then before the court on the basis of the city's demurrer to plaintiff's amended complaint in the same proceeding * * * [I]n any event, with the Wisconsin Supreme Court having given plaintiff leave to plead over, its earlier determination holding notice sufficient did not have the same effect of finally determining the ultimate rights of the parties that the original order of Justice DECKEL-MAN in the instant case did. In truth, the matter was still pending."

This court's "without prejudice" provision seems quite analogous to the Wisconsin court's leave to plead over.

In *Huie (supra)* no appeal had been taken from the first judgment. In the present case an appeal was taken but dismissed for want of prosecution. In *Bray v Cox* (38 NY2d 350, 355) the Court of Appeals held "the dismissal of an appeal for want of prosecution to be on the merits of all claims which could have been litigated had the appeal been timely argued or submitted." But such a dismissal can hardly be be deemed to be "on the merits" when it is based on an order which says "without prejudice". (See *City of New York v Caristo Constr. Corp.,* 62 NY2d 819, *supra.*) If dismissal of an appeal for want of prosecution is deemed to be an affirmance, then a dismissal based on a "without prejudice" statement can only be analogized to an affirmance without prejudice. The Court of Appeals apparently recognized this distinction in the *Bray* case. It said (p 353): "Furthermore, since the dismissal of an appeal from a final judgment under 22 NYCRR 500.6 (a) is *with prejudice*" (emphasis added). But here, as we have said so many times, this court acted "without prejudice".

The rule of the *Bray* case (*supra*) is not a rule of law. It is apparently a matter within the discretion of each appellate court as to what effect to give to dismissal of an earlier appeal for failure to prosecute (*Aridas v Caserta,* 41 NY2d 1059, 1061,

*supra).* This court followed the *Bray* case in *Matter of Jackson* (*Liberty Mut. Ins. Co.*) (54 AD2d 539) where, however, it pointed out that the "judgment was *unconditionally* dismissed for lack of prosecution". (Emphasis added.)

Order, Supreme Court, New York County (E. J. Greenfield, J.), entered November 17, 1983 denying defendant City of New York's motion to vacate judgment, should be reversed, on the law and the facts, and in the exercise of discretion, without costs, and the motion to vacate the judgment granted, and the judgment herein entered May 19, 1982, as amended December 6, 1983, vacated, and the complaint dismissed.

The appeal from the amended judgment should be dismissed as academic, without costs.

Asch, J. P., Milonas and Kassal, JJ., concur.

Order, Supreme Court, New York County, entered on November 17, 1983, is unanimously reversed, on the law and the facts, and in the exercise of discretion, without costs and without disbursements, and the motion to vacate the judgment granted, and the judgment herein entered on May 19, 1982, as amended December 6, 1983, is vacated, and the complaint is dismissed. The appeal from the amended judgment of said court entered on December 6, 1983, is dismissed as academic, without costs and without disbursements.