Acosta and Manzanet-Daniels, JJ.,
dissent in a memorandum by Manzanet-Daniels, J., as follows: The order of this Court, entered June 2, 2011, affirming the judgment entered by the trial court awarding plaintiff $4,463,856.89, plus interest, stands as a final judgment in plaintiffs favor which may not now be disturbed (Nash v Port Auth. of N.Y. & N.J., 85 AD3d 414 [2011]). I would accordingly find that the motion court erred in vacating plaintiffs judgment on the basis that she was bound by the Court of Appeals’ determination in Matter of World Trade Ctr. Bombing Litig. (17 NY3d 428, 455 [2011]). The Court of Appeals itself stated that the Nash action was “beyond the scope of th[e] [Ruiz] appeal,” inasmuch as “[a] judgment in the Nash action was recently affirmed by the Appellate Division” (id. at 441 n 7).
An explanation of the complex procedural history of this case is in order. In 1993, Nash commenced a personal injury action against the Port Authority of New York and New Jersey in the Supreme Court, New York County. Meanwhile, hundreds of other actions were commenced against the Port Authority in connection with the 1993 bombing of the World Trade Center. *422 These actions, including the Nash action, were consolidated into a single action for the purpose of determining liability (see Matter of World Trade Ctr. Bombing Litig., 3 Misc 3d 440, 442 [Sup Ct, NY County 2004]). Most of the plaintiffs were represented during the liability phase by counsel for a steering committee appointed by the trial court (see id.; 17 NY3d at 439). Several plaintiffs, including Nash, retained separate counsel to represent them in the liability phase, as well as in subsequent damages trials.
On October 26, 2005, the jury in World Trade Ctr. Bombing Litig. returned a verdict as to liability, finding that the Port Authority’s failure to maintain a secure and safe premises, in light of known dangers, was a substantial factor in causing the plaintiffs’ injuries. The Port Authority moved to set aside the verdict or, in the alternative, for a new trial (see Matter of World Trade Ctr. Bombing Litig., 2007 NY Slip Op 34467[U] [Sup Ct, NY County 2007, Figueroa, J.]). The motion was denied and the Port Authority appealed. This Court affirmed by order entered April 29, 2008 (Nash v Port Auth. of N.Y. & N.J., 51 AD3d 337 [2008]). The Port Authority did not seek leave to appeal from the order, and instead permitted the parties to try their respective damages claims.
In early 2009, the damages trial in Nash resulted in a verdict, dated March 9, 2009, in favor of Nash and against the Port Authority in the amount of $4,463,856.89, plus 9% interest. This Court affirmed by order entered June 2, 2011 (see Nash, 85 AD3d 414 [2011]). The Port Authority did not seek leave to appeal to the Court of Appeals from the order, which of course would have brought up for review not only the issue of damages, but any issue necessarily affecting the judgment, including the interim liability determination.
After a jury verdict was rendered on damages in the case of plaintiff Antonio Ruiz, the Port Authority elected to appeal that judgment directly to the Court of Appeals, bringing up for review the interim liability determination of this Court (World Trade Ctr. Bombing Litig., 17 NY3d at 440-441 [henceforward herein, Ruiz or the Ruiz appeal]).
The Port Authority did not believe Nash to be a party respondent to the Ruiz appeal. Indeed, when plaintiff requested to be declared a respondent to the Port Authority’s appeal from Ruiz’s final judgment, the Port Authority opposed the request, stating:
“[Ms. Nash] is not a respondent [on the Ruiz appeal] because the Port Authority did not seek (and was not granted) leave to appeal from a judgment in favor of Ms. Nash—nor could it have, because Ms. Nash’s case is currently pending before the Appellate Division. . . .
*423 “The confusion as to Ms. Nash’s status as a respondent appears to arise from the mistaken impression that this is an appeal ‘from the Appellate Division’s April 29, 2008, Nash decision.’ ... It is, in fact, an appeal from the final judgment in favor of Mr. Ruiz, entered in the Office of the County Clerk on January 20, 2010. The appeal from that judgment brings up for review all intermediate orders necessarily affecting the judgment, CPLR 5501(a) (1), including, of course, the April 2008 order holding the Port Authority liable for the bombing. However, the appeal is not taken from that interlocutory April 2008 liability ruling itself. See CPLR 5602(a) (ii) (authorizing appeal ‘from a final judgment’).”
Nash submitted a brief in the Ruiz appeal, and participated in the initial oral argument on June 1, 2011.
Meanwhile, the Port Authority having failed to appeal directly from this Court’s order entered June 2, 2011, Nash’s judgment became final and was beyond further review or interference. On or about July 18, 2011, Nash formally withdrew from participating in argument of Ruiz’s appeal.
At the August 24, 2011 reargument of the Ruiz appeal, Judge Ciparick inquired of Port Authority’s counsel, Mr. Rothman, whether a reversal of the liability finding would “unravel” final dispositions that had been previously made. Mr. Rothman replied “no.” When Judge Ciparick further inquired if a reversal of the liability finding would affect “future cases . . . that are still in the pipeline,” Mr. Rothman responded that it “would [a]ffect cases that are still in the pipeline.”
Nash’s case, of course, was not still “in the pipeline”; the time to seek reargument and/or leave to appeal from the order of this Court, entered June 2, 2011, had already expired. Indeed, the Court of Appeals’ opinion in Ruiz expressly noted that Nash, while a plaintiff in another action, had requested, and been granted, permission “to present argument” on the Ruiz appeal (World Trade Ctr. Bombing Litig., 17 NY3d at 441 n 7). The Court of Appeals noted, however, that the Nash action was “beyond the scope of [the Ruiz] appeal,” as “[a] judgment in the Nash action was recently affirmed by the Appellate Division” (id.).
On July 20, 2011, the Port Authority moved in the Court of Appeals for a declaration that an automatic stay as to Nash was “in effect or, alternatively, for a discretionary stay” (Matter of World Trade Ctr. Bombing Litig., 17 NY3d 856, 856 [2011]). The motion was of course premised on the contention that Nash was a party to the Ruiz appeal.
By order entered September 22, 2011, the Court of Appeals *424 unanimously “dismissed” the “stay” motion on the ground that it lacked “jurisdiction to entertain [it],” inasmuch as “no appeal or motion for leave to appeal in the Nash action [was] pending before the Court of Appeals (see CPLR 5519)” (id.).
Nash’s judgment having become final, the Port Authority cannot avoid its enforcement (see Lacks v Lacks, 41 NY2d 71, 73, 77 [1976] [“(T)he judgment was affirmed by the Appellate Division on October 26, 1972. Leave to appeal to the Court of Appeals was denied by both the Appellate Division and this (C)ourt. The final judgment was thus beyond further review”]). The Court has stated that to vacate a final judgment after the right to appeal had been exhausted “would be to undermine significantly the doctrine of res judicata, and to eliminate the certainty and finality in the law and in litigation which the doctrine is designed to protect” (id. at 77).
The Port Authority made a strategic decision not to appeal either the liability or the damages determination in Nash, instead prosecuting the Ruiz case. The Port Authority thereafter abandoned any claim that it was not liable to Nash, and represented to the Court of Appeals that a reversal in Ruiz would not affect cases like Nash’s that had been finally determined. Having failed to seek leave to appeal from Nash’s affirmed final judgment, the Port of Authority cannot maintain that Nash’s case was still “in the pipeline” such that Nash was bound by the Court of Appeals’ subsequent determination in the Ruiz case.
The Port Authority asserts that Nash’s submission of a brief in Ruiz and participation in oral argument, at least initially, render her bound by the outcome in that case, notwithstanding the fact that the decision in Ruiz was rendered subsequently to this Court’s affirmance of Nash’s final judgment. The problem with this argument is that at the time the decision in Ruiz was rendered, the judgment in Nash’s favor in the Appellate Division case was already final and thus beyond further review or collateral attack (see Lacks, 41 NY2d at 73, 77). Thus, the Court of Appeals had no jurisdiction to make a pronouncement as to the outcome of Nash’s case, as the Court itself expressly recognized in stating that the Nash action was “beyond the scope of th[e] [Ruiz] appeal,” inasmuch as “[a] judgment in the Nash action was recently affirmed by the Appellate Division,” and in dismissing the Port Authority’s motion for a stay on the basis of “lack of jurisdiction.” As Professor Siegel notes in the Practice Commentaries accompanying CPLR 5513, “[t]he time in which to appeal or to move for leave to appeal if leave is necessary is one of the most rigid in all of. procedure. Its passing *425 without the proper step being taken forfeits the appeal and puts an end to the matter ... In fact, the passing of the period is deemed to go to the jurisdiction of the court—to its subject matter jurisdiction” (David D. Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5513:l [emphasis added]).
McMahon v City of New York (105 AD2d 101 [1984]), relied on by the Port Authority, is distinguishable and in fact supports Nash. In McMahon, the Court of Appeals had reversed an underlying liability determination in O’Connor v City of New York (58 NY2d 184 [1983]) while an appeal from McMahon’s separate damages case was still pending in the Appellate Division. When the Court of Appeals reversed the liability order in the O’Connor case, the City moved for reargument of our prior affirmance on liability and for an extension of time to perfect the damages appeal in McMahon’s case. We denied the motion without prejudice to applications for appropriate postjudgment relief in the Supreme Court in light of the Court of Appeals’ reversal of the interlocutory liability determination.
Here, in contradistinction, Nash’s appeal before our Court had been submitted, argued, decided, and the time to move for reargument and/or leave to appeal had already expired prior to the Court of Appeals’ determination in Ruiz. Nash’s case, unlike McMahon’s was not “in the pipeline.” In McMahon, we noted “at the time the supervening judgment of the highest court was rendered, a direct appeal was still pending from the final judgment in the other appeal . . . and the issues were still subject to review on that appeal” (105 AD2d at 106 [emphasis added]). Since the time to appeal from the order finally determining the rights of the parties in Nash had already expired prior to the time the Court of Appeals decided Ruiz, Nash’s judgment could no longer be disturbed. I would accordingly hold that the motion court improvidently exercised its discretion in granting the motion to vacate the judgment.