[3 NE3d 1128, 980 NYS2d 880]

LINDA P. NASH, Appellant, v THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Respondent.

Argued October 9, 2013; decided November 26, 2013

## POINTS OF COUNSEL

*Louis A. Mangone*, New York City, for appellant. I. When the Port Authority of New York and New Jersey decided, very deliberately, to not seek leave to appeal the Appellate Division's affirmance of Linda P. Nash's final judgment to this Court it also, very deliberately (a) allowed Ms. Nash's final judgment to become res judicata on the merits of her claim against it, to wit, "a conclusive determination" of all "questions of both law and fact there litigated," "the legal effect" of which could not be "destroy[ed] or diminish[ed]" even if it "was erroneous," (b) waived and abandoned its pursuit of an order reversing the April 29, 2008 interim order of the Appellate Division in Ms. Nash's case, and all claims of error in her final judgment, (c) deprived this and all other courts of subject matter jurisdiction

to "destroy or diminish" it, and (d) put an end to Ms. Nash's case. (*Lacks v Lacks*, 41 NY2d 71; *Slater v American Min. Spirits Co.*, 33 NY2d 443; *Sears, Roebuck & Co. v 9 Ave.-31 St. Corp.*, 274 NY 388; *Bray v Cox*, 38 NY2d 350; *Matter of Huie [Furman]*, 20 NY2d 568; *Deeves v Fabric Fire Hose Co.*, 19 AD2d 735, 14 NY2d 633; *Matter of Haverstraw Park v Runcible Props. Corp.*, 33 NY2d 637; *Ocean Acc. & Guar. Corp. v Otis El. Co.*, 291 NY 254; *Pollak v Port Morris Bank*, 257 NY 287; *People v Thomas*, 47 NY2d 37.) II. This Court's September 22, 2011 decision in *Ruiz* (17 NY3d 428 [2011]) was not a decision in Linda P. Nash's case, where the Port Authority of New York and New Jersey voluntarily abandoned its pursuit of an order reversing the Appellate Division's April 29, 2008 interim order that separately affirmed the Port Authority's liability to her on her claim, did not, and could not have been, intended to apply to Ms. Nash's previously affirmed final judgment, and could not serve as a predicate for any motion for relief from Ms. Nash's affirmed final judgment under CPLR 5015 (a) (5). (*Parker v Rogerson*, 35 NY2d 751; *Deeves v Fabric Fire Hose Co.*, 14 NY2d 633; *Matter of Huie [Furman]*, 20 NY2d 568; *Sears, Roebuck & Co. v 9 Ave.-31 St. Corp.*, 274 NY 388; *Gager v White*, 53 NY2d 475; *Firestone Tire & Rubber Co. v Risjord*, 449 US 368; *Matter of McKenna v County of Nassau, Off. of County Attorney*, 61 NY2d 739; *Glicksman v Board of Educ./Cent. School Bd. of Comsewogue Union Free School Dist.*, 278 AD2d 364; *People v Thomas*, 47 NY2d 37; *Slater v American Min. Spirits Co.*, 33 NY2d 443.)

*Weil, Gotshal & Manges LLP*, New York City (*Gregory Silbert, Richard A. Rothman* and *Karin Portlock* of counsel), and *Goldberg Segalla LLP*, Garden City for respondent. I. The Supreme Court properly granted the Port Authority of New York and New Jersey's motion to vacate the judgment. (*Lacks v Lacks*, 41 NY2d 71; *Woodson v Mendon Leasing Corp.*, 100 NY2d 62; *Maddux v Schur*, 53 AD3d 738; *Patron v Patron*, 40 NY2d 582; *Alliance Prop. Mgt. & Dev. v Andrews Ave. Equities*, 70 NY2d 831; *People v Guay*, 18 NY3d 16; *Matter of Huie [Furman]*, 20 NY2d 568; *Levitt v County of Suffolk*, 166 AD2d 421; *Matter of Grossman v Ilowitz*, 72 AD3d 821; *Dupkanicova v James*, 17 AD3d 627.) II. Linda P. Nash's remaining assertions would not constitute error as a matter of law and are false in any event.

### OPINION OF THE COURT

PIGOTT, J.

In *Matter of World Trade Ctr. Bombing Litig.* (17 NY3d 428 [2011]) (*Ruiz*), we held that the governmental immunity doc-

trine insulated the Port Authority of New York and New Jersey (Port Authority) from tortious liability for injuries sustained in the 1993 World Trade Center bombing (*id.* at 455). Four days after our decision in *Ruiz* was published, the Port Authority moved by order to show cause to vacate the $4.4 million judgment of plaintiff, Linda P. Nash, which had been entered on January 15, 2010. The Nash judgment had become final as of July 13, 2011 due to the failure of the Port Authority to appeal to this Court from the order of the Appellate Division entered June 2, 2011 affirming that judgment (85 AD3d 414 [1st Dept 2011]).

The Port Authority moved to vacate the judgment pursuant to CPLR 5015 and Supreme Court's "inherent powers." As relevant here, CPLR 5015 (a) provides that "[t]he court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person . . . upon the ground of: . . . (5) reversal, modification or vacatur of a prior judgment or order upon which it is based." Supreme Court granted the Port Authority's motion to vacate the judgment, stating that the *Ruiz* holding "eviscerate[d] any judgment, holding or finding of liability" against the Port Authority, and "require[d]" Supreme Court to find that the Port Authority was "insulated from tortious liability" (2012 NY Slip Op 33401[U], *1 [2012]).

A divided Appellate Division affirmed, with the majority holding that Supreme Court "did not abuse its discretion by vacating [Nash's] final judgment," given this Court's determination in *Ruiz* (102 AD3d 420, 421 [1st Dept 2013]). The dissenting Justices, however, reasoned that because Nash's judgment had become final once the Port Authority failed to appeal from the June 2, 2011 order, it could not avoid its enforcement and had abandoned any claim that it was not liable to Nash (*id.* at 424). Nash then appealed to this Court as of right.

Nash claims that Supreme Court lacked jurisdiction to vacate her judgment under CPLR 5015 (a) (5) because the Port Authority failed to timely appeal to this Court from the June 2, 2011 Appellate Division order affirming her judgment on both liability and damages, thereby rendering her judgment a final one beyond the scope of review. Both parties, as well as the majority and dissent in the Appellate Division, rely on *McMahon v City of New York* (105 AD2d 101 [1st Dept 1984]) in support of their respective arguments. In *McMahon*, the City sought to

vacate the judgment, which was based on the same liability determination following a joint trial on liability, that we reversed in *O'Connor v City of New York* (58 NY2d 184 [1983]). Our decision in *O'Connor* was released while McMahon's appeal to the Appellate Division on an issue related to damages was still pending. However, under the facts of this case, *McMahon* is inapplicable.

In *McMahon*, the City failed to take any further action on the pending *McMahon* appeal. Instead, with two days remaining on its time to perfect, the City moved to reargue the original liability determination and for an extension of time to perfect its appeal. The Appellate Division denied that motion "without prejudice to applications for appropriate postjudgment relief in the Supreme Court in light of *O'Connor v City of New York*" (*McMahon*, 105 AD2d at 103-104). The City then moved to vacate the judgment pursuant to CPLR 5015 (a) (5). The motion court denied the motion because the Appellate Division had dismissed the *McMahon* appeal. However, the Appellate Division reversed, granted the motion to vacate and dismissed the complaint, stating that "the *McMahon* case was still in the direct appeal process" and the court's "without prejudice" language specifically gave the City the opportunity to make a postjudgment motion (*id.* at 103-104). The dismissal of the appeal itself did not prohibit the City from seeking whatever postjudgment relief it could obtain from Supreme Court, including relief pursuant to CPLR 5015 (a).

Here, we agree with Nash that her judgment had, in fact, become final when the Port Authority failed to appeal within the requisite time period. But the discussion does not end there. Although a court determination from which an appeal has not been taken should "remain inviolate," that rule applies "[a]bsent the sort of circumstances mentioned in CPLR 5015" (*Matter of Huie [Furman]*, 20 NY2d 568, 572 [1967]; *see Lacks v Lacks*, 41 NY2d 71, 74-75 [1976] [stating that objections made pursuant to CPLR 5015 (a) (4) survive a final judgment]; *see also* Third Preliminary Rep of Advisory Comm on Prac and Pro, 1959 NY Legis Doc No. 17 at 204-205 [stating that proposed CPLR 50.5 (a), later renumbered 5015 (a), applies to "(the) setting aside (of) final judgments"]). Moreover, as Professor Siegel has observed,

"[i]f a judgment for which preclusive effect is sought is itself based on an earlier judgment . . . , and the

earlier one has been vacated or reversed or otherwise undone, it is of course *divested of its finality* and the remedy to cancel the second judgment is a motion to vacate it on the ground of the undoing of the first" (Siegel, NY Prac § 444 at 776 [5th ed 2011] [emphasis supplied], citing CPLR 5015 [a] [5]).

Paragraph (5) of section 5015 (a) is applicable where the reversed, modified or vacated judgment or order is the basis for a later judgment—not where it merely compelled the result as a matter of collateral estoppel or stare decisis, *but where it was actually entered in the same lawsuit as, and led directly to, the later judgment.* Thus, section 5015 (a) (5) applies in a case like this one where a joint trial on liability results in a single order entered in two cases, and where, after a separate trial on damages in one of the cases, that order is reversed on appeal. Here, when *Ruiz* was appealed to this Court pursuant to CPLR 5602 (a) (1) (ii) (bringing up for review the liability order previously entered in both *Ruiz* and *Nash*), Nash submitted a brief and participated in the June 1, 2011 argument. However, after the judgment in her appeal became final on July 13, 2011, she chose not to participate when the *Ruiz* appeal was reargued in August 2011.

Section 5015 applies not only to judgments that are still in the appellate process, as in *McMahon*, but also to those in which appellate review has been exhausted. Save for the one-year requirement in section 5015 (a) (1) concerning excusable defaults, motions made pursuant to paragraphs (2), (3) and (5) contain no limitation of time, only a requirement that the time within which the motion is made be "reasonable" (David D. Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5015:3). The determination as to whether such a motion has been made within a reasonable time is within the motion court's discretion (*see* Third Preliminary Rep of Advisory Comm on Prac and Pro, 1959 Legis Doc No. 17 at 205). Notably, section 5015 does not distinguish between final and nonfinal judgments, or those that have or have not exhausted the appeals process. Therefore, Nash's contentions that Supreme Court was precluded from entertaining the motion or lacked jurisdiction to vacate the judgment are without merit.

Here, the prior liability order upon which Nash's judgment was based was reversed by this Court in *Ruiz*. Nonetheless, section 5015 (a) makes clear that the motion court's determination to vacate a judgment is a discretionary one. It "may relieve" a

litigant from a judgment "upon such terms as may be just." This language applies to all five of the enumerated CPLR 5015 (a) paragraphs, in addition to qualifying the court's common-law ability to grant relief from a judgment in the interests of justice (*see Ladd v Stevenson*, 112 NY 325, 332 [1889]). In exercising its discretion, the motion court should "consider the facts of the particular case, the equities affecting each party and others affected by the judgment or order, and the grounds for the requested relief" (Weinstein-Korn-Miller, NY Civ Prac ¶ 5015.03 at 50-284).

■ Here, Supreme Court's only finding was that this Court's decision in *Ruiz* "eviscerate[d] any judgment, holding or finding of liability involving tortious liability on behalf of the Port Authority," and therefore "require[d]" Supreme Court to find the Port Authority insulated from tortious liability pursuant to CPLR 5015 (a) (5) (2012 NY Slip Op 33401[U], *1 [2012]). It also appeared to believe that once the Port Authority had demonstrated that the *Ruiz* holding reversed the earlier liability determination to which Nash was a party, Supreme Court had no choice but to grant the Port Authority's vacatur motion. That was error.

Our holding in *Ruiz* did not divest Supreme Court of its authority to review the equities with respect to these parties in determining whether to vacate the judgment, nor did it mandate that the court considering a CPLR 5015 (a) motion grant the motion by rote. Similarly, the Appellate Division, which possessed the authority to review Supreme Court's determination, could have conducted its own independent analysis of the pertinent facts, but it failed to do so, holding only that "[t]he motion court did not abuse its discretion by vacating a final judgment" pursuant to CPLR 5015 (a) (5) (102 AD3d at 421). But, here, Supreme Court exercised *no* discretion, "because it erroneously perceived that it had no discretion to exercise" (*see People v Cronin*, 60 NY2d 430, 433 [1983]).

Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter should be remitted to Supreme Court for further proceedings in accordance with this opinion.

GRAFFEO, J. (dissenting in part). All six of us agree that the Appellate Division order affirming the vacatur of plaintiff's judgment must be reversed. The majority concludes that the appropriate corrective action is to remit this case to Supreme

Court to permit consideration of the Port Authority's vacatur application anew. Because I believe that Supreme Court lacked discretion to vacate the *Nash* judgment under the circumstances presented, I would reverse the order of the Appellate Division and deny the motion to vacate. In my view, the majority misunderstands the purpose of CPLR 5015 (a) (5) and interprets the statute in a manner that offends well-settled principles concerning the finality of judgments for which appellate rights have been exhausted.

I begin with some fundamentals. A party that appeals in a particular case can obtain relief while a party that fails to do so cannot, even if the nonappealing party had preserved the same meritorious argument and would have prevailed had an appeal been taken (*Hecht v City of New York*, 60 NY2d 57 [1983]; *People v Caminito*, 3 NY2d 596 [1958], *cert denied sub nom. Noia v People of the State of New York*, 357 US 905 [1958] [where defendant did not appeal, he could not bring coram nobis proceeding seeking vacatur of conviction raising issue on which codefendants had prevailed on appeal]). We generally do not reward litigants for failing to assert arguments in a timely fashion—with few exceptions, claims not promptly advanced are deemed waived or forfeited and this proposition applies to the right to seek reversal of a judgment on the ground that it is erroneous on the facts or law (i.e., the type of argument made on direct appeal).

Once a judgment is final (either because appellate rights have been exhausted or a party has failed to timely pursue them), it is generally binding as between the parties with respect to any legal or factual issue they had a full and fair opportunity to litigate (*see generally Bray v Cox*, 38 NY2d 350 [1976] [dismissal of interlocutory appeal for failure to prosecute bars later attempt to raise the same issue on appeal from final judgment]; *Slater v American Min. Spirits Co.*, 33 NY2d 443 [1974] [a party cannot seek reargument or renewal after the time to appeal the order has expired]). Simply stated, when a party allows its appellate rights to lapse, it forfeits the right to challenge any issue it could have raised on direct appeal. The majority does not explain why these principles are inapplicable here—I find them to be dispositive. From the moment the Port Authority's time to pursue an appeal from the Appellate Division order affirming the *Nash* judgment expired, it was foreclosed from pursuing (through a vacatur application or otherwise) any issue that it could have raised in that appeal—including the governmental function immunity defense.

Nothing in CPLR 5015 (a) suggests otherwise. That statute permits a party to seek vacatur of a judgment or order on one of five grounds: (1) excusable default; (2) newly discovered evidence; (3) fraud, misrepresentation or other misconduct of the adverse party; (4) the issuing court lacked subject matter jurisdiction over the controversy; or—as relevant here—(5) "reversal, modification or vacatur of a prior judgment or order upon which it is based." In a case where a motion is brought under one of the first three paragraphs, the grounds for vacatur will, by definition, be distinct from any argument the losing party could have raised in a direct appeal from the judgment (if one was available). A default judgment is not appealable (*see* CPLR 5511; *see Lauer v City of Buffalo*, 53 AD3d 213 [4th Dept 2008]) and cannot be vacated absent the creation of a factual record explaining the circumstances giving rise to the default and supplying a good excuse. Likewise, a judgment cannot be attacked on direct appeal on the basis of newly-discovered evidence or fraud—these grounds for vacatur must be adjudicated in a collateral proceeding (rather than an appeal) because they also require development of a new factual record.

When vacatur is sought on grounds that could not have been asserted in a direct appeal from the judgment, judgment finality principles would not bar such an application, even if appellate rights have lapsed, because the proponent of the motion could not have had a full and fair opportunity to litigate the issue in the prior proceeding. Particularly where a judgment has been obtained by fraud, it would be perverse to preclude a collateral attack under CPLR 5015 (a) on the rationale that the party against whom the judgment was obtained exhausted appellate rights prior to discovering the misconduct.

It follows, therefore, that a vacatur application can sometimes properly involve a final judgment (one for which appellate rights have expired)—without offending well-settled law. That is why it is no surprise that the majority is able to cite statements by the drafters of the provision and this Court indicating, as a general proposition, that CPLR 5015 (a) can result in "[the] setting aside [of] final judgments" (*see* Third Preliminary Rep of Advisory Comm on Prac and Pro, 1959 Legis Doc No. 17 at 204-205 [referencing predecessor to CPLR 5015 (a)]; *see also Matter of Huie [Furman]*, 20 NY2d 568, 572 [1967]).

This truism is also evident from our analysis in *Lacks v Lacks* (41 NY2d 71 [1976]), in which we entertained a CPLR 5015 (a) (4) vacatur application even though the proponent had exhausted

her right to challenge the judgment on appeal. We did not, however, rely on any broad holding that all judgments are subject to vacatur regardless of the circumstances as the majority now suggests. Rather, in *Lacks* we focused on the fact that the proponent alleged that the court issuing the judgment lacked subject matter jurisdiction, explaining: "it is blackletter law that a judgment rendered without subject matter jurisdiction is void, and that the defect may be raised at any time and may not be waived" (*id.* at 75). Since subject matter jurisdiction is a nonwaivable jurisdictional defect, it presents a limited exception to the finality principles addressed above and, hence, there is no bar to adjudication of that question at any time, even after appellate rights have lapsed. No comparable issue is presented here.

The controversy in this case—whether the Port Authority could vacate the *Nash* judgment based on a legal issue that could have been adjudicated on direct appeal, despite expiration of its appellate rights—presents a question of first impression. But the majority does not directly address the issue, stating, in conclusory fashion, that all final judgments are subject to vacatur under CPLR 5015 (a). I see nothing in the statute indicating that the general rules relating to judgment finality do not apply when, as is the case here, a party seeks to vacate a judgment on grounds that could have been raised on direct appeal and for which appellate rights have lapsed; CPLR 5015 (a) (5) does not include a "notwithstanding" clause suggesting a legislative intent to permit vacatur in every circumstance, even if it would otherwise be barred by law.

Unlike subject matter jurisdiction—an issue that is nonwaivable and can be raised by any party at any time in any forum— the Port Authority sought vacatur of the *Nash* judgment based on an issue that was waivable (a defense founded on governmental function immunity), that had actually been litigated during the *Nash* action, and that would have been reviewable on direct appeal (indeed, the Port Authority's arguments were considered and rejected by the Appellate Division in two interlocutory appeals). The Port Authority could have asserted its challenge to the governmental function immunity defense in this Court in an appeal from the *Nash* judgment had it timely filed a motion for leave to appeal from the First Department's order of affirmance—but it failed to do so. In other contexts, courts have held that a party that neglected to timely pursue an appeal cannot circumvent appellate time restrictions by pursuing a CPLR

5015 (a) motion requesting the same relief that would have been available in a timely appeal (*see Pergamon Press v Tietze*, 81 AD2d 831 [2d Dept 1981], *appeal dismissed* 54 NY2d 605 [1981]). A party whose appellate rights have terminated should not be permitted to revive them via a vacatur application.

Nor should a party who failed to appeal be permitted to upset a judgment using an order obtained in an appeal from a judgment involving a different party—and nothing in CPLR 5015 (a) (5) is to the contrary. The statute permits vacatur of a judgment based on "reversal, modification or vacatur of a prior judgment or order *upon which it is based*"—language suggesting that the judgment reversed should involve the same parties, if not the same lawsuit. This view of the statute is consistent with precedent. In most of the Appellate Division cases addressing this provision, the party that secured the judgment under attack was also a party to the appeal or other proceeding that resulted in reversal of the prior underlying order (*see e.g. Matter of Grossman v Ilowitz*, 72 AD3d 821 [2d Dept 2010], *lv denied* 20 NY3d 853 [2012]; *Dupkanicova v James*, 17 AD3d 627 [2d Dept 2005]; *Aces Mech. Corp. v Cohen Bros. Realty & Constr. Corp.*, 136 AD2d 503 [1st Dept 1988]). The legal issue underlying the reversal order was litigated on the merits by that party in an appropriate forum—an appeal or other noncollateral proceeding. CPLR 5015 (a) (5) simply provided an efficient vehicle for the opposing litigant to apply that result to a subsequent judgment in the same case or a related proceeding involving the same party.

In this case, CPLR 5015 (a) (5) is being applied far more expansively to permit the Port Authority to potentially vacate a judgment obtained by Nash using an appellate reversal secured in an appeal from a judgment issued in a different plaintiff's case—the *Ruiz* appeal (*see Matter of World Trade Ctr. Bombing Litig.*, 17 NY3d 428 [2011], *cert denied* 133 S Ct 133 [2012]). There is only one other appellate decision in which CPLR 5015 (a) (5) was interpreted to allow such a result—*McMahon v City of New York* (105 AD2d 101 [1st Dept 1984]). Similar to this case, *McMahon* involved a mass tort claim in which there was a joint order on liability that was later reversed in an appeal involving another plaintiff's judgment. Even assuming it was correctly decided, *McMahon* is distinguishable because it does not present the same finality concerns that arise here.

The *McMahon* judgment was the subject of a pending direct appeal at the time we reversed the judgment in the other

case—a fact heavily emphasized by the Appellate Division. Whether defendant perfected its appeal, or instead sought vacatur in a CPLR 5015 (a) proceeding, the result in *McMahon* would have been the same because appeals are generally decided based on the law in effect at the time they are heard. Under the doctrine of stare decisis, the defendant in *McMahon* (whose appeal was still pending) was entitled to the benefit of the more favorable precedent secured in the other case—it therefore made little difference whether that relief was obtained by perfecting the appeal or bringing a motion to vacate. Here, in contrast, the Port Authority was not entitled to take advantage of the precedent emanating from our decision in *Ruiz* because it allowed its appellate rights to lapse before we issued our ruling. Having failed to timely appeal, the Port Authority should not be permitted to benefit from a change in the law that occurred after the *Nash* judgment became final.

Moreover, to permit the Port Authority to vacate the final judgment in *Nash* based on relief it secured in *Ruiz* is the functional equivalent of granting relief to a nonappealing party. Ruiz and Nash brought separate actions against the Port Authority; although the cases were tried jointly for purposes of determining liability, they were never consolidated. The Port Authority's appeal from the *Ruiz* judgment brought up for review the prior interlocutory verdict on liability but only to the extent that order necessarily affected the *Ruiz* judgment (CPLR 5501 [a] [1])—any interests other parties might have had in the validity of the interlocutory order were simply not before us.

The Port Authority's assertion that our decision crediting the governmental immunity argument in the *Ruiz* appeal meant that the underlying liability determination was "extinguished" for all plaintiffs misunderstands appellate practice and our Court's jurisdiction. If we were to follow that view to its logical conclusion, the Port Authority could use the *Ruiz* reversal to vacate judgments obtained against any plaintiff, years after the fact without limitation—even if it failed to appeal in any other case. This use of the statute was surely not intended by the drafters of CPLR 5015 (a) (5) and would raise significant due process concerns. On the other hand, there is no unfairness in requiring a party who failed to timely appeal to pay a judgment, even if it is later determined that some legal flaw in an earlier interlocutory order would have yielded relief had an appeal been timely pursued. Such a result is consistent both with the doctrine of finality and the plain language of CPLR 5015 (a) (5).

For all of these reasons, I conclude that Supreme Court lacked authority to vacate the *Nash* judgment under the circumstances presented, rendering a remittal inappropriate. Even were that not the case, vacatur of this judgment would not be warranted. Although plaintiff suffered her traumatic brain injuries in 1993—more than 20 years ago—she has yet to see a penny of her $5.2 million damages award. She is now nearly 70 years old—but the majority nonetheless remits this matter to give the Port Authority yet another opportunity to prevail on an issue that it forfeited when it failed to timely appeal the Appellate Division order of affirmance in July 2011. The Port Authority could (and should) have protected its interests by simply filing a motion for leave to appeal and I find no reasonable excuse for its failure to do so. Despite the fact that counsel for Nash filed a brief and participated in the first oral argument, I do not credit the contention that the Port Authority believed that we had therefore declared plaintiff a "party respondent" to the *Ruiz* appeal since our Court did not issue an order to that effect and would have had no statutory basis to do so (as the Port Authority noted at the time). The equities are in plaintiff's favor—but I fear there may still be no end in sight for Mrs. Nash. For all of these reasons, I respectfully dissent.

Judges READ, SMITH and SCUDDER* concur with Judge PIGOTT; Judge GRAFFEO dissents in part in an opinion in which Judge PETERS* concurs; Chief Judge LIPPMAN and Judges RIVERA and ABDUS-SALAAM taking no part.

Order reversed, with costs, and case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein.

---

* Designated pursuant to NY Constitution, article VI, § 2.